Wilton CHATMAN–BEY, Appellant

v.

Richard THORNBURGH, Attorney General of the United States, et al.

No. 84–5901.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 2, 1987.

Decided Dec. 23, 1988.

Wilton Chatman–Bey, pro se, was on the initial briefs for appellant.

Peter Buscemi, Washington, D.C., appointed by this court, was on the supplemental briefs for appellant.

Nathan Dodell, Washington, D.C., for appellee. Joseph E. diGenova, U.S. Atty.*, Michael W. Farrell, Thomas J. Tourish, Jr., John C. Martin and Ina Strichartz, Asst.

* At the time brief was filed.

U.S. Attys., Washington, D.C., were on the brief for appellee.

Before WALD, Chief Judge, ROBINSON, MIKVA, EDWARDS, RUTH BADER GINSBURG, BORK [**], STARR, SILBERMAN, BUCKLEY, WILLIAMS, D.H. GINSBURG and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge STARR.

Concurrence in the judgment filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III, with whom Circuit Judge MIKVA joins.

STARR, Circuit Judge:

We agreed to hear this case *en banc* to consider a recurring issue in the administration of justice in this district, namely whether a federal prisoner, incarcerated outside the jurisdictional limits of the District of Columbia, can properly maintain an action in this district challenging his or her parole eligibility date as determined by federal prison and parole officials. The issue was initially presented to us in *In re United States Parole Comm'n*, 793 F.2d 338, *reh'g granted*, 798 F.2d 1532 (D.C.Cir. 1986), which was eventually dismissed as moot upon the prisoner's release on parole. Following supplemental briefing, the present case, involving a federal prisoner who had been sentenced both in federal court in Maryland and in the Superior Court of the District of Columbia, was heard *en banc*.

## I

The history of this litigation is described in our two earlier opinions. *Chatman-Bey v. Meese*, 797 F.2d 987 (D.C.Cir.1986) (*Chatman-Bey II*); *In re Chatman-Bey*, 718 F.2d 484 (D.C.Cir.1983) (*Chatman-Bey I*). To recap (and update) briefly, Chatman-Bey is currently incarcerated at the Federal Correctional Institute in Petersburg, Virginia, following a transfer from the FCI at Lewisburg, Pennsylvania, where the pertinent events for our purposes transpired. Shortly after his arrival at Lewisburg, Chatman-Bey was informed of his parole eligibility date by federal prison authorities. By virtue of Chatman-Bey's two convictions, prison authorities calculated his parole eligibility date to be October 1999. Chatman-Bey objected to this determination, appealing to his prison case worker at Lewisburg, the warden at Lewisburg, the Bureau of Prisons Federal Regional Director in Philadelphia, and finally the BOP General Counsel in Washington. The gravamen of Chatman-Bey's objection was that federal authorities had improperly failed to aggregate his federal and D.C. sentences for purposes of determining his parole eligibility date. Under Chatman-Bey's analysis, his eligibility date would be June 3, 1991. Unsuccessful in his administrative efforts, Chatman-Bey filed a *pro se* complaint in federal court in the District of Columbia. The complaint was styled as a petition for habeas corpus or mandamus.

Prior to service of the petition, the District Court transferred the case, *sua sponte*, to the Middle District of Pennsylvania, the district (at the time) of petitioner's incarceration. Petitioner thereupon challenged the *sua sponte* transfer order in this court. In *Chatman-Bey I*, we vacated the order and remanded the case to the District Court. Our decision was specifically predicated on the view that petitioner's action need not be brought in habeas corpus. *Chatman-Bey I*, 718 F.2d at 487 n. 7.

On remand, the District Court held that Chatman-Bey's claim was cognizable in either habeas or mandamus and that venue was also proper in this District. *Chatman-Bey v. Smith*, 594 F.Supp. 718, 721 (D.D.C.1984). The District Court went on, however, to reject petitioner's substantive claim that his parole eligibility date had been incorrectly calculated. *Id.* at 722–24. The case then came to us again. In *Chatman-Bey II*, we reversed and held that

[**] Judge Bork was a member of the panel at the time of oral argument, but did not participate in this decision.

petitioner's parole eligibility date had been incorrectly determined. *Chatman–Bey II*, 797 F.2d at 993–94. In so concluding, the *Chatman–Bey II* panel followed the position stated and developed in *In re United States Parole Comm'n, supra,* that petitioner was not required to resort to habeas corpus and that venue was proper in this district. *Chatman–Bey II*, 797 F.2d at 990–91. Although *Chatman–Bey II*'s merits determination was approved by the court *en banc, Chatman–Bey II*, 797 F.2d at 994 n. 10, *see Irons v. Diamond,* 670 F.2d 265, 268 n. 11 (D.C.Cir.1981), the procedural issue whether Chatman–Bey's petition sounds in habeas and, if it does, whether jurisdiction and venue appropriately lie in the District of Columbia rather than in the district of incarceration (the Middle District of Pennsylvania)[1] was placed before the full court. This case thus presents the recurring question whether federal parole eligibility cases can properly be litigated in this jurisdiction when the federal prisoner is incarcerated at one of the approximately 40 federal prisons situated across the country, and none of which is located in the District of Columbia. For the reasons that follow, we conclude that Chatman–Bey's complaint sounds in habeas corpus and must be maintained as such. We further conclude that, because the government waived the defenses of venue and personal jurisdiction, this case was appropriately before the District Court of the District of Columbia.

## II

◼ Chatman–Bey styled his *pro se* complaint as a habeas petition or, in the alternative, a petition for mandamus. Because (for reasons that follow) habeas is an available and potentially efficacious remedy, it is clear beyond reasonable dispute that mandamus will not appropriately lie.[2] We turn, then, to an explanation of why habeas is the Congressionally ordained remedy for parole eligibility cases.

### A

The modern history of habeas corpus is a story of steady expansion of the Great Writ beyond the more limited office that it served at common law. Justice Blackmun aptly captured the point in his concurring opinion in *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), a case that will loom large in the latter part of our analysis: "[W]e have come a long way from the traditional notions of the Great Writ. The common-law scholars of the past hardly would recognize what the [Supreme] Court has developed...." 410 U.S. at 501, 93 S.Ct. at 1133.

The essence of modern habeas corpus is to safeguard the individual against unlawful custody. As Justice Brennan put it for the Court in the watershed case of *Fay v. Noia,* 372 U.S. 391, 438, 83 S.Ct. 822, 848, 96 L.Ed.2d 837 (1963), habeas' role is to serve "as an effective and imperative remedy for detentions contrary to fundamental law...." Habeas gets at custody or detention of an individual. Its function is to test the power of the state to deprive an individual of liberty in the most elemental sense. This ancient role is evident in the language of the habeas statute itself, deriving from the venerable Judiciary Act of 1789. The statute provides for issuance of writs on behalf of persons who are "in custody." 28 U.S.C. § 2241 (1982).

---

**1.** Notwithstanding Chatman–Bey's transfer during the course of this litigation to the FCI at Petersburg, which is in the Eastern District of Virginia, habeas jurisdiction as a general matter continues to be in the district where the prisoner was incarcerated at the time the habeas petition was filed. *See, e.g., Ex parte Endo,* 323 U.S. 283, 65 S.Ct. 208, 89 L.Ed. 243 (1944); *Bishop v. Medical Superintendent,* 377 F.2d 467 (6th Cir. 1967).

**2.** Since it is established that mandamus is a drastic remedy to be invoked only in extraordi-

nary situations, *see, e.g., Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34–35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (per curiam), mandamus would potentially lie in the present case only if the complaint fell outside the reach of habeas (or if habeas was inefficacious). Since, as we shall now show, Chatman–Bey's complaint falls comfortably within the broad confines of habeas corpus, mandamus would be inappropriate in this case even if habeas were simply an available, rather than exclusive, remedy. See also *infra* n. 4.

In construing the federal statutes that, over the years, have codified the Great Writ, the Supreme Court has steadily eliminated many of the traditional limitations on the availability of habeas corpus. Especially germane for our purposes is the Court's emphatic rejection, in *Peyton v. Rowe*, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed. 2d 426 (1968), of the proposition that habeas would not lie if the relief granted would not result in the prisoner's immediate release. Habeas is broad, the *Peyton* Court emphasized; "the statute does not deny the federal courts power to fashion appropriate relief other than immediate release." *Id.* at 66, 88 S.Ct. at 1556. Looking to history, the Court went on: "Since 1874, the habeas corpus statute has directed the courts to determine the facts and dispose of the case summarily, 'as law and justice require.'" *Id.* at 66–67, 88 S.Ct. at 1556. Thus it was that in *Peyton* the habeas petitioner was permitted to maintain a challenge to a state criminal conviction even though he was serving a lengthy sentence for another, separate conviction. Habeas relief obviously would have done the prisoner no good in terms of securing his release from confinement either immediately or in the near future. Indeed, the first sentence (which the prisoner was serving and did not challenge) was enormously long (30 years). *Id.* at 55, 88 S.Ct. at 1550. Yet, the Supreme Court permitted the challenge to the second conviction and in the process overruled one of its prior decisions, *McNally v. Hill*, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934), which had held that the habeas statute did *not* authorize attacks upon future consecutive sentences. In doing so, the Supreme Court, speaking through Justice Brennan, vindicated then-Chief Judge Haynsworth's opinion for the Fourth Circuit which had predicted High Court overruling of *McNally:*

> Writing for a unanimous court, Chief Judge Haynsworth reasoned that this Court would no longer follow *McNally*, which in his view represented a "doctrinaire approach" based on an "old jurisdictional concept" which had been "thoroughly rejected by the Supreme Court in recent cases."

*Peyton v. Rowe*, 391 U.S. at 57, 88 S.Ct. at 1551.

Like such seminal habeas cases as *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), and *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), *Peyton* signaled strong High Court disapproval of formalistic analysis in the context of habeas corpus. Anti-formalism in modern habeas interpretation was first heralded by Justice Holmes in his frequently cited dissent in *Frank v. Mangum*, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915) (habeas corpus should be available to petitioner who alleges that state court fact-finding was tainted by mob influence). There, the Great Dissenter observed that *"habeas corpus cuts through all forms and goes to the very tissue of the structure." Id.* at 346, 35 S.Ct. at 594. A reading of the cases that have followed in the wake of Justice Holmes' memorable dissent abundantly demonstrates that modern habeas jurisprudence emphasizes the breadth and flexibility of the Great Writ in vindicating the fundamental concern in a democratic society of checking the powers of the state vis-a-vis an individual in custody. Habeas is, in the words of Justice Harlan in dissent in *Fay v. Noia*, "a fundamental safeguard against unlawful custody." 372 U.S. at 449, 83 S.Ct. at 854.

**B**

Consistent with its broad vision of habeas corpus, the Supreme Court has expressly sanctioned the invocation of habeas where the injury in question is, among other things, a prejudicing of one's right to be considered for parole. In *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), which we shall presently discuss at greater length, the Court observed that the existence of an outstanding indictment (in Kentucky) which the habeas prisoner (incarcerated in Alabama) was seeking to challenge "adversely affected his condition of [present] confinement [in Alabama] ... by prejudicing his opportunity for parole." *Braden*, 410 U.S. at 487, 93 S.Ct. at 1125. It will be readily apparent that Chatman–

Bey's claim is strikingly similar to that advanced by the habeas petitioner in *Braden;* indeed, it is more graphic in that Chatman–Bey is flatly being denied consideration for parole for eight years. There is a "here-and-now" effect on Chatman–Bey that was not so evident in *Braden.*

It thus seems beyond reasonable dispute that, in framing his complaint, Chatman–Bey proceeded appropriately in invoking the federal habeas statute. As a federal prisoner, Chatman–Bey obviously is "in custody" within the meaning of the statute; in addition, he has mounted an attack on the terms of that custody. That is, Chatman–Bey contends that, under the parole structure as erected by Congress and implemented by the Parole Commission, he should become eligible for consideration for parole in 1991, rather than 1999. If this claim (which our court *en banc* has already sustained) has merit (as it obviously does), then Chatman–Bey is being subjected to an unlawful term or condition of custody,[3] namely the deprivation of the opportunity to be considered for release from confinement until eight years after he is in fact entitled to such consideration. That claim, mounted by an individual "in custody," falls comfortably within the broad reach of habeas corpus.

**3.** It should be noted that such parole issues have been prospectively eliminated by the Sentencing Reform Act of 1984, Pub.L. 98–473, 98 Stat. 1987 (codified as amended at 18 U.S.C. §§ 3551–3586 (Supp. IV 1986)). The Act eliminates parole for persons convicted after November 1, 1987 and establishes a system of determinate sentencing.

**4.** Our concurring colleague suggests that our approach "plots a decisional course in the wrong direction." Concurring Op. at 815. Habeas is itself an extraordinary remedy, the concurrence indicates, and thus the courts should not "indulge unlimited range to either habeas or mandamus." *Id.* at 815. But it is a commonplace that mandamus is extraordinary in the sense that, as our colleague recognizes, "a writ of mandamus will ordinarily be denied when another avenue to the relief he desired is open." *Id.* And that is precisely the point. Here, as we indicate at length in the text, Chatman–Bey sought either habeas or mandamus relief; the efficacy of habeas in this setting, which the concurrence fully recognizes, simply precludes resort to mandamus under settled principles.

## C

Before turning to the question of the appropriate forum for resolution of Chatman–Bey's claim, we pause to address the distinct issue whether a federal prisoner challenging the determination of a parole eligibility date is required to bring his claim in habeas, or whether another form of action (say, mandamus or a declaratory judgment action) will also lie.[4] As to this question, we turn to the Supreme Court's decision in *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). The issue in *Preiser* was whether *state prisoners* could invoke the familiar federal civil rights statute, 42 U.S.C. § 1983, to challenge the deprivation of good-time credits effected by state prison officials. The *Preiser* majority, speaking through Justice Stewart, concluded that the prisoners' action was required to be brought in habeas. Otherwise, the Court reasoned, Congress' carefully crafted habeas structure, requiring as it did exhaustion of state remedies by state prisoners, would be undermined by permitting state prisoners to invoke a (non-habeas) federal remedy (§ 1983) which did not mandate exhaustion. Analyzing the two statutes, the Court concluded that Congress intended the more specific federal habeas statute, "explicitly and historically designed to provide the

Thus, upon reflection, we have not steered in the wrong direction at all, even under our colleague's mode of analysis. The concurrence's real quarrel, rather, is the determination that habeas provides the exclusive remedy under the circumstances of this case. That is a fair point of debate. But in beginning the debate, the concurrence intimates that Chatman–Bey's claim "does not implicate either the fact or the duration of his detention." That surely cannot be. Chatman–Bey's claim indeed does so, as a fair reading of the complaint demonstrates. True enough, as we recognize in the text, Chatman–Bey's success in establishing a 1991 (rather than 1999) eligibility date does not assure his release, but it surely "implicates the duration" of his detention in the most elemental way. Chatman–Bey will not be released prior to expiration of his sentence (minus good time and assuming no act of clemency or pardon) unless he is released on parole. By definition, he will not be released on parole until he has attained eligibility for consideration for parole. Surely then, in the most practical sense, parole eligibility "implicates" the duration of confinement.

means for a state prisoner to attack the validity of his confinement," 411 U.S. at 489, 93 S.Ct. at 1836, to be utilized, as opposed to the more generic civil rights remedy embodied in § 1983. Inasmuch as Congress had amended the habeas statute in 1948 to require exhaustion of state remedies, the *Preiser* majority concluded that "[i]t would wholly frustrate explicit congressional intent to hold that the [challengers] could evade this requirement by the simple expedient of putting a different label on their pleadings." *Id.* at 489–90, 93 S.Ct. at 1836.

*Preiser* thus makes clear that, as a matter of Congressional intent, prisoners mounting a challenge to the lawfulness of their custody are to proceed by means of habeas. That intent is evidenced by the Article I branch's employment of the pivotal terms, "a person in custody," in the statute itself. Unless he or she is "in custody," an individual with a constitutional (or other federal question-based) grievance simply would not be heard in the context of habeas. To be sure, the pivotal term, "custody," has been broadly defined by the modern habeas cases, all of a piece with the Twentieth Century thrust, which we have previously adumbrated, of expanding habeas beyond its limited common-law boundaries. But "custody" must exist if habeas is to lie; and, concomitantly, where the individual is in custody, Congress' provision of an express remedy for unlawful detentions means, as *Preiser* teaches, that habeas is the remedy intended by the Article I branch to be employed. This is all of a piece with the well-settled principle that a specific statute displaces (or, as is frequently said, preempts) more general remedies. *See Brown v. General Services Administration*, 425 U.S. 820, 834–35, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) (and cases cited therein).

This interpretive conclusion should give no cause for concern, much less alarm, over potential dangers to other values in our constitutional system. That is, Chatman–Bey's claim does not trigger the "*Preiser* dilemma" of relegating an individual advancing a federal claim to a state forum (and thus denying immediate access to a federal forum for adjudication of a federal claim). *Id.* 411 U.S. at 501, 93 S.Ct. at 1842 (Brennan, J., dissenting). In stark contrast to the factual setting in *Preiser*, where as we just saw *state prisoners* were seeking to mount a § 1983 challenge to the actions of *state officials* in denying them "good time" credits, Chatman–Bey's status as a federal prisoner means that his challenge to his federal parole eligibility determination will be resolved in a federal, not state, court. This fundamental distinction between federal parole-eligibility cases and *Preiser*-type cases (involving state prisoners mounting federal claims) means that the elemental concern that animated the *Preiser* dissenters is fully accommodated, namely *the prompt resolution of federal claims in federal court*. That is, the "*Preiser* dilemma" is avoided when the habeas petitioner comes, as does Chatman–Bey, from the federal (rather than a state) prison system.

Moreover, *Preiser* cannot, in conscience, be limited to the specific facts of that case, namely the elimination of good-time credits which, if overturned, would result in immediate release or a definite reduction in the actual amount of time to be spent in prison. As previously suggested, the modern habeas cases teach, broadly, that habeas is designed to test the lawfulness of the government's asserted right to *detain* an individual. That, as we have seen, is the essence of Chatman–Bey's complaint. Like various successful habeas petitioners before him (*e.g.*, Mr. Rowe in *Peyton v. Rowe*), Chatman–Bey is not laying claim to immediate release or release in the near future. He is, however, maintaining that he is being deprived of the chance to secure his release (for the very substantial period of eight years) by unlawfully being declared ineligible for parole consideration. This opportunity, Chatman–Bey maintains, is secured to him by federal law, if the aggregation policies underlying federal criminal statutes and the parole system are to prevail. Congress has therefore designated habeas as the appropriate vehicle for individuals who, like Chatman–Bey, challenge the lawful-

ness of their custody.[5]

What is more, Congress' intent can be vindicated without sacrificing the value of securing a prompt adjudication of federal claims in federal court. To the contrary, that is precisely what federal habeas corpus accomplishes for federal prisoners. Thus, the *desideratum* of having federal claims adjudicated in a federal forum, emphasized so strongly by the dissenters in *Preiser*, is fully achieved by interpreting federal law to oblige federal prisoners to avail themselves of federal habeas procedures.[6]

### III

■ That being so, we turn next in our analysis to the question of the proper defendant in habeas cases and specifically to this court's holding in *Guerra v. Meese*, 786 F.2d 414 (D.C.Cir.1986). Although, for reasons already set forth, the key habeas concept of "custody" (and thus "custodian") has been expanded significantly in recent years, the law of this circuit is clear that "[a] district court may not entertain a habe-

as corpus action unless it has personal jurisdiction over the custodian of the prisoner." *Guerra*, 786 F.2d at 415. We reaffirm that holding today. It is also well settled that the appropriate defendant in a habeas action is the custodian of the prisoner. *See Strait v. Laird*, 406 U.S. 341, 92 S.Ct. 1693, 32 L.Ed.2d 141 (1972); *Schlanger v. Seamans*, 401 U.S. 487, 91 S.Ct. 995, 28 L.Ed.2d 251 (1971).

The issue, then, is who is the habeas petitioner's "custodian?" Not surprisingly, the answer is not "everyone." Indeed, not any federal official who has some direct relationship to the federal prisoner will do service as a "custodian" within the meaning of the federal habeas statute. *Guerra* makes this point clearly, in holding that the United States Parole Commission (although responsible for making parole determinations) is not the "custodian" of federal prisoners seeking release (and, *a fortiorari*, eligibility) on parole. As the *Guerra* panel put it: "Were the Parole Commission to decide to change the prisoners' parole eligibility dates today, they might be freed. But this power does not make the Commis-

---

**5.** In *In re United States Parole Comm'n*, 793 F.2d 338, *reh'g granted*, 798 F.2d 1532 (D.C.Cir.1986), a panel of this court held that a prisoner's challenge to new parole guidelines that postponed his eligibility for parole did not attack the "fact or duration" of confinement because even if successful, the challenge would not have entitled him to speedier release. Therefore, the court held, the prisoner was not limited to habeas relief, but could bring an action for declaratory and injunctive relief. *Id.* at 344–46. The panel in *Chatman–Bey II*, relying on *In re United States Parole Comm'n*, similarly held that Chatman–Bey's challenge to the BOP's calculation of his parole eligibility date did not attack the "fact or duration" of confinement, and so could be brought as a request for declaratory relief pursuant to 28 U.S.C. § 2201. *Chatman–Bey II*, 797 F.2d at 990–91. Having previously vacated both decisions, we now hold that a prisoner's challenge to the determination of his eligibility for parole does indeed attack the "fact or duration" of confinement within the meaning of *Preiser*; therefore, habeas is the sole remedy available to such a prisoner, for the reasons set forth above.

Our concurring colleague discusses several *post-Preiser* cases in evaluating the exclusivity of habeas relief. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), involved an action by state prisoners seeking to challenge the procedures by which disciplinary proceedings at the state prison were conducted. *Wolff*

thus raised squarely the *"Preiser* dilemma," which we discuss in the text that follows, of state prisoners seeking (and potentially being denied) access to a federal court. Here, of course, Chatman–Bey is being assured the prompt adjudication of his claims in federal court; the sole question is *which* federal court (that of the district where the individual is incarcerated or a court remote from that location) will adjudicate the case. In addition, *Wolff* involved a claim for money damages by state prisoners, which sounds squarely within 42 U.S.C. § 1983 and which raises questions that we do not address, much less resolve, in this case. *See infra* n. 6. *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), likewise involved a *"Preiser* dilemma" action by state prisoners seeking access to federal court; so too with *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).

**6.** It should be evident that what has been said thus far has no bearing on prisoners' claims for money damages for alleged violations of federal rights. Our analysis goes solely to situations where the federal prisoner is seeking non-monetary redress for alleged violations of federally secured rights going to the lawfulness of his or her custody. We therefore are in accord with our concurring colleague's discussion in this particular. *See* Concurring Op. at 816–817.

sion the prisoners' custodian in the sense of the habeas corpus statute." *Guerra,* 786 F.2d at 416.

Not only did *Guerra* reject the "Parole Commission as custodian" contention, but it also rearticulated settled circuit law that the Attorney General is not the custodian for purposes of the habeas statute. *Id.* (citing *Sanders v. Bennett,* 148 F.2d 19, 20 (D.C.Cir.1945)). Thus, it should be abundantly clear that habeas petitioners, such as Chatman–Bey, cannot properly bring suit against such officials as the Attorney General and such entities as the Parole Commission. Rather, the proper defendant in federal habeas cases is the warden. In this instance, of course, that is the warden of the FCI in Lewisburg, *see* n. 1 *supra,* whom Chatman–Bey in fact named in the original complaint. Under these circumstances, *Guerra*'s holding is quite clear: "We ... hold that, for purposes of challenging a Parole Commission action on the sentence a prisoner is currently serving in a federal penal facility, the warden of that facility is the prisoner's custodian within the meaning of [the federal habeas statute]." *Guerra,* 786 F.2d at 416.

This fact should give no cause for concern. The limitation on the category of "custodian" in no wise circumscribes the types of claims that can properly be maintained in the specific context of habeas litigation. Quite apart from the breadth of modern habeas corpus, the Supreme Court has specifically stated that claims directed against federal officials in Washington can be litigated in the jurisdiction where the habeas action appropriately lies. That statement is contained in our already familiar friend, the *Braden* case, where the Court limited one of its earlier decisions (which had been informed by strict, formalistic notions about habeas jurisdiction) involving a lawsuit against then-Attorney General Clark brought by individuals detained at Ellis Island. The suit, eventuating in the case of *Ahrens v. Clark,* 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948), was filed in United States District Court in Washington, D.C. But that was held to be the wrong forum. The Supreme Court in *Ahrens* upheld this court's determination that a federal district court's habeas jurisdiction extended only to cases where the prisoner seeking relief is confined within the district court's territorial jurisdiction. Later, in *Braden,* the Court cut back substantially on *Ahrens* (and indeed overruled its territorially-based jurisdictional holding); but in so doing, the *Braden* Court stated flatly that the habeas petitioners in *Ahrens,* although challenging a policy promulgated by the Attorney General, "could have challenged their detentions by bringing an action in the Eastern District of New York against the federal officials who confined them in that district." 410 U.S. at 500, 93 S.Ct. at 1132. That was so even though the Ellis Island custodian obviously had nothing to do with fashioning Attorney General Clark's determinations under the Alien Enemy Act of 1798 (which was the purported statutory basis of the deportation order at issue in the case). *Braden,* then, stands as clear authority for the proposition that Chatman–Bey (and other federal prisoners who are challenging some aspect of Parole Commission policy or action) can properly bring his complaint in his local federal district court and secure a resolution of his claim in the context of habeas corpus. In short, as *Braden* expressly states, lawsuits aimed at a policy fashioned in Washington, D.C. need not be brought in this district. Like the petitioners in *Ahrens* situated on Ellis Island, the federal court of the jurisdiction where the individual is incarcerated (or otherwise in "custody") can properly entertain the action.

## IV

This brings us, finally, to *Braden*'s teaching that habeas jurisdiction is not limited to the district where the individual is incarcerated. That is to say, by virtue of *Braden*'s holding, it can no longer be maintained that a federal court outside the district of incarceration lacks subject matter jurisdiction over a habeas claim.

Here, at long last, are the facts of *Braden.* As we alluded to before, Braden was incarcerated in Alabama pursuant to a state conviction. There was outstanding

against him, however, an indictment in Kentucky on state charges there. Kentucky authorities therefore lodged a detainer against Braden with Alabama authorities. Braden had no quarrel with his Alabama conviction, nor with the detainer itself. What he did object to was the indictment in Kentucky which underlay the detainer. He therefore sought to challenge the validity of the Kentucky indictment by filing a habeas petition in federal district court in Kentucky. The Supreme Court held that he could.

Not only did the *Braden* Court reaffirm its holding in *Peyton v. Rowe*, which as we saw before permits a challenge to a future indictment (or sentence), but it also held that venue considerations were to apply in the determination of the forum in which habeas should be brought. It made no sense, the Court stated, for Braden to bring his action in federal court in Alabama:

> It is in Kentucky, where all of the material events took place, that the records and witnesses pertinent to petitioner's claim are likely to be found. And that forum is presumably no less convenient for the respondent and the Commonwealth of Kentucky, than for the petitioner. The expense and risk of transporting the petitioner to the Western District of Kentucky, should his presence at a hearing prove necessary, would in all likelihood be outweighed by the difficulties of transporting records and witnesses from Kentucky to the district where the petitioner is confined. Indeed, respondent makes clear that "on balance, it would appear simpler and less expensive for the State of Kentucky to litigate such questions ... in one of its own Federal judicial districts."

*Braden*, 410 U.S. at 493–94, 93 S.Ct. at 1128–29.

Hence, both sides in the *Braden* litigation favored Kentucky as the forum for resolution of the prisoner's challenge to his Kentucky indictment, even though Braden found himself incarcerated in Alabama. But the fly in the ointment, as the Kentucky authorities saw it, was the language of the federal habeas statute, as interpreted by the Supreme Court in the *Ahrens case*. The statute in question, 28 U.S.C. § 2241(a) (1982), provided (and still does) broadly that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." It was the language, "within their respective jurisdictions," that Kentucky authorities (and the Sixth Circuit) interpreted as requiring the prisoner to seek habeas relief within the jurisdiction where he was confined. The *Braden* Court disagreed:

> [T]hat interpretation is not compelled either by the language of the statute or by the decision in *Ahrens*, and ... is fundamentally at odds with the purposes of the statutory scheme....

*Id.* at 494, 93 S.Ct. at 1129.

It was in this context that the Supreme Court set forth the bedrock principle that habeas "does not act upon the prisoner ... but the person who holds him in what is alleged to be unlawful custody." *Id.* at 494–95, 93 S.Ct. at 1129. Quoting an ancient statement by the Court, the *Braden* Court emphasized the basic procedural fact of habeas practice—the writ is "directed to, and served upon, not the person confined, but the jailer." *Id.* at 495, 93 S.Ct. at 1130 (quoting *Wales v. Whitney*, 114 U.S. 564, 574, 5 S.Ct. 1050, 1055, 29 L.Ed. 277 (1885)). Thus, the Court stated, the statutory language required "nothing more than that the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction' requiring that the prisoner be brought before the court for a hearing on his claim ... even if the prisoner himself is confined outside the court's territorial jurisdiction." *Braden*, 410 U.S. at 495, 93 S.Ct. at 1130. Canvassing a number of its prior rulings, the *Braden* Court concluded with the observation that "we have held, if only implicitly, that the petitioner's absence from the district does not present a jurisdictional obstacle to the consideration of the claim." *Id.* at 498, 93 S.Ct. at 1131.

In light of *Braden*'s teaching, the present case is thus not properly to be analyzed in terms of subject matter jurisdiction. That is, the physical presence of Chatman–Bey within this district is not required for the federal court of this district to have jurisdiction over his habeas claim. *Braden* holds as much. But *Braden* also makes clear that venue considerations may, and frequently will, argue in favor of adjudication of the habeas claim in the jurisdiction where the habeas petitioner is confined. Moreover, what seems clear beyond cavil, especially in light of *Braden*'s clear statement in this respect, is that the habeas court must have personal jurisdiction over the "custodian." *Id.* at 495, 93 S.Ct. at 1130.

█ In the case before us, it is evident that the District Court would not have personal jurisdiction over the warden at the Lewisburg FCI, who, again, is Chatman–Bey's "custodian." [7] But this need not detain us, inasmuch as the government failed in its answer to interpose as defenses either improper venue or lack of personal jurisdiction over the warden. It is, of course, elementary that a defense of improper venue or lack of personal (as opposed to subject matter) jurisdiction is

waived unless the defense is asserted by a pre-answer motion (*i.e.*, Rule 12(b)) or in a responsive pleading, *i.e.*, the answer or a timely amendment thereto. Fed.R.Civ.P. 12(h)(1); C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 1388 (1969).

To canvass briefly the pertinent facts in this regard, the government filed its answer in February 1984 and asserted lack of subject matter jurisdiction (Fed.R.Civ.P. 12(b)(1)) and failure to state a claim (12(b)(6)). The government did not, however, assert improper venue or lack of personal jurisdiction over the warden. Since, as *Braden* teaches, the jurisdictional flaw is not with respect to the subject matter of the suit, any other objection (or, more precisely, defense) [8] should have been interposed in conformity with the applicable provisions of the Federal Rules.[9]

█ The factual idiosyncrasies of this case aside, however, it is now clear for reasons already stated that: (1) claims such as Chatman–Bey's properly sound in habeas and indeed must be brought in habeas; and (2) the "custodian" for habeas purposes is the warden of the FCI where the petitioner is incarcerated. That being so, it

---

**7.** Although 28 U.S.C. § 1391(e) generally provides for nationwide service on officers of the United States, this basis of personal jurisdiction is unavailable in habeas. *Schlanger v. Seamans*, 401 U.S. 487, 490 n. 4, 91 S.Ct. 995, 998 n. 4, 28 L.Ed.2d 251 (1971).

**8.** This includes the defense of lack of service of process, which is waived if not asserted in a timely manner. Rule 12(h)(1) F.R.C.P. The record indicates that the warden was never served. Yet, lack of service was likewise never asserted by the government.

**9.** The government's failure to assert the defense of lack of personal jurisdiction cannot be excused on the ground that this defense was somehow not "available" at the time of defendant's answer. Rule 12(g), Fed.R.Civ.P., provides, sensibly, that a defense may be waived only if "available" at the time of the answer or pre-answer motion. The decisional law indicates that a defense is unavailable if its legal basis did not exist at the time of the answer or pre-answer motion, *Holzager v. Valley Hospital*, 646 F.2d 792, 796 (2d Cir.1981) (law of the circuit subsequently reversed by the Supreme Court) or the complaint does not contain facts sufficient to indicate that a defense was possible. *Glater v.*

*Eli Lilly & Co.*, 712 F.2d 735, 738–39 (1st Cir. 1983) (defendant unaware of plaintiff's residence). In those cases, it was for all practical purposes impossible for the defendants to interpose their respective defenses at the time of the answer. The situation here, however, is quite different. For one thing, in *Chatman–Bey I* the panel did not foreclose the possibility that the case could proceed in habeas. *Chatman–Bey I*, 718 F.2d at 487–88. On remand, the District Court set forth its conclusion that it indeed had habeas jurisdiction and treated mandamus as an alternative basis for relief. *Chatman–Bey v. Smith*, 594 F.Supp. 718, 721 (D.D.C.1984). Then, following *Chatman–Bey I*, the government expressly argued that mandamus would not lie and that the action could proceed only in habeas. *Chatman–Bey v. Meese*, 797 F.2d 987, 990 (D.C.Cir.1986). Under the particular circumstances of this case, the government was thus by no means unaware that the action could proceed in habeas. Such defenses as lack of personal jurisdiction or improper venue that appeared to be relevant only in habeas were thus "available" and, consequently, waived by the government when not asserted in its answer.

would not be inappropriate in this limited (but recurring) context for the District Court to transfer such cases *sua sponte* to the jurisdiction of confinement.[10]

As to the specific procedure to follow, we are satisfied that issuance of an order to show cause is the most appropriate step prior to *sua sponte* transfer. This procedure will provide the habeas petitioner with both notice of the District Court's anticipated action and an opportunity to set forth reasons why the case can (and should) properly be heard in this jurisdiction. We are reluctant, however, to erect further procedural devices which would tend to turn the question of the most appropriate (or indeed correct) habeas forum into a mini-litigation of its own, with the inevitable consequence of delay. Delay is undesirable in all aspects of our justice system, but it is especially to be avoided in the sensitive context of habeas corpus. The Supreme Court has said, time and again, that prompt resolution of prisoners' claims is a principal function of habeas. *Rose v. Lundy,* 455 U.S. 509, 520, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1981); *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). The erection of elaborate procedural devices to resolve venue-type questions would exact an unacceptably heavy toll on the core habeas value of speed. Federal prisoners deserve a prompt and just answer to their claims, not a ticket of admission to the arcane world of forum-selection law. In short, where, as here, the federal prisoner has immediate access to a federal forum close at hand, preliminary skirmishing over the speculative benefits of possibly appropriate fora simply spawns unproductive delay and fails to further any substantial interest relevant to the core values enshrined in the Great Writ.

\* \* \*

We conclude, in sum, that habeas corpus provides the exclusive remedy for claims such as Chatman–Bey's. We further conclude that, in the peculiar circumstances of this case, the prior merits disposition of the court *en banc* stands by virtue of the government's failure to interpose its defenses in timely fashion. Henceforth, however, the elemental considerations of speedy resolution of habeas claims, fairness to the parties, and the orderly administration of justice are more appropriately balanced where district courts are authorized to transfer such cases *sua sponte,* after the habeas petitioner has been afforded notice and an opportunity to respond.

JUDGMENT ACCORDINGLY.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge, with whom MIKVA, Circuit Judge joins, concurring in the judgment:

I am unable to join the court in its holding that solely in a habeas corpus proceeding may Chatman–Bey contest the 1999 parole eligibility date set by the Commission. In my view, Chatman–Bey does not challenge either the fact or duration of his confinement, nor does he seek immediate or sooner release. I think, then that habeas is not exclusive in his situation, and that he is free to pursue any non-habeas remedy otherwise proper.[1]

---

**10.** This is not say that *sua sponte* dismissal is authorized. To the contrary, we have held that a civil action *in forma pauperis* may not be dismissed *sua sponte* as "frivolous" within the meaning of 28 U.S.C. § 1915(d) solely because the court lacks personal jurisdiction over the defendants. *Anger v. Revco Drug Co.,* 791 F.2d 956 (D.C.Cir.1986). Nor are we suggesting that *sua sponte* transfer is appropriate outside the unique context of habeas. *See In re Scott,* 709 F.2d 717 (D.C.Cir.1983) (*sua sponte* transfer inappropriate in FOIA context). For reasons that follow in the text, transfer (but not dismissal) *sua sponte* is uniquely appropriate in habeas cases by virtue of the clear limitations as to personal jurisdiction over the various wardens in the Bureau of Prisons system.

**1.** I have heretofore explained my position on the propriety of nonhabeas proceedings for resolution of a somewhat different sort of parole eligibility dispute. *In re United States Parole Comm'n,* 253 U.S.App.D.C. 267, 793 F.2d 338 (1986). The opinion therein, however, was spontaneously vacated when the court voted to rehear the case *en banc, In re United States Parole Comm'n,* 255 U.S.App.D.C. 101, 798 F.2d 1532 (1986) (*en banc*), and the case became moot before a ruling *en banc* was announced. *In re United States Parole Comm'n,* No. 85–1205 (D.C.Cir. Dec. 30, 1987) (*en banc*) (order).

## I

The court's thesis that an application for a writ of habeas corpus is the only suitable means of litigating controversies over eligibility for parole consideration, I submit, is the product of a series of misconceptions. The first, occurring at the very outset of the court's analysis, plots a decisional course in the wrong direction. The court declares that "[b]ecause ... habeas is an available and potentially efficacious remedy, it is clear beyond reasonable dispute that mandamus will not appropriately lie." [2] Then, with the additional observation that mandamus is reserved for extraordinary situations, the court states that "mandamus would potentially lie in the present case only if the complaint fell outside the reach of habeas (or if habeas was inefficacious)." [3] The court concludes that "[s]ince ... Chatman-Bey's complaint falls comfortably within the broad confines of habeas corpus, mandamus would be inappropriate in this case even if habeas were simply an available, rather than exclusive, remedy." [4]

With all due respect, none of that is at all clear to me. I readily agree that mandamus is an extraordinary remedy, to be invoked only in exceptional circumstances. [5] I agree, too, that a writ of mandamus will ordinarily be denied when another avenue to the relief desired is open. [6] But that does not necessarily mean that mandamus, or some other nonhabeas form of action, is out of Chatman-Bey's reach.

Habeas is itself an extraordinary remedy. [7] To indulge unlimited range to either habeas or mandamus is to obliterate the functional difference between the two. [8] Moreover, while habeas is the traditional and indeed the sole procedural mechanism for terminating or shortening a period of unlawful restraint, [9] its exclusivity in other missions has yet to be precisely defined. [10] So, assuming that habeas is a remedy that Chatman-Bey might pursue, it does not follow inexorably that he is compelled to do so. Put another way, when a prisoner's claim does not implicate either the fact or the duration of his detention, his mere ability to resort to habeas does not invariably require him to do so. [11] As a conspicuous example, the Supreme Court has held that a state prisoner may proceed in habeas to challenge the conditions of his confine-

2. Majority Opinion (Maj.Op.) at 806.

3. *Id.* at 806 n. 2.

4. *Id.*

5. *Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34, 101 S.Ct. 188, 190, 66 L.Ed.2d 193, 196 (1980); *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305, 310 (1967); *In re Scott,* 228 U.S.App.D.C. 278, 280, 282, 709 F.2d 717, 719, 721 (1983) (per curiam); *Starnes v. McGuire,* 168 U.S.App.D.C. 4, 15, 512 F.2d 918, 929 (1974) (*en banc*).

6. *Kerr v. United States Dist. Court,* 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725, 733 (1976); *Barnhart v. Devine,* 248 U.S.App.D.C. 375, 384, 771 F.2d 1515, 1524 (1985); *In re GTE Serv. Corp.,* 246 U.S.App.D.C. 45, 47–48, 762 F.2d 1024, 1026–1027 (1985); *In re Halkin,* 194 U.S. App.D.C. 257, 279, 598 F.2d 176, 198 (1979).

7. E.g., *Lehman v. Lycoming County Children's Servs. Agency,* 458 U.S. 502, 516 n. 19, 102 S.Ct. 3231, 3240 n. 19, 73 L.Ed.2d 928, 940 n. 19 (1982) (quoting *Hensley v. Municipal Court,* 411 U.S. 345, 351, 93 S.Ct. 1571, 1575, 36 L.Ed.2d 294, 300 (1973)).

8. "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody...." *Preiser v. Rodriguez,* 411 U.S. 475, 484, 93 S.Ct. 1827, 1833, 36 L.Ed.2d 439, 447 (1973). The office of statutory mandamus is "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361 (1982).

9. E.g., *Preiser v. Rodriguez, supra* note 8, 411 U.S. at 484–488, 500, 93 S.Ct. at 1833–1836, 1841, 36 L.Ed.2d at 447–450, 456.

10. See, e.g., *id.* at 500, 93 S.Ct. at 1841, 36 L.Ed.2d at 456; *United States ex rel. Schonbrun v. Commanding Officer,* 403 F.2d 371, 373–374 (2d Cir.1968), *cert. denied,* 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969); *Qualls v. Shaw,* 535 F.2d 318, 319 (5th Cir.1976); *Holmes v. United States Bd. of Parole,* 541 F.2d 1243, 1248 (7th Cir.1976).

11. The majority opinion quibbles with my use of the word "implicate." Maj.Op. at 808 n. 4. In so doing, I refer to what is "require[d] or entail[ed] as a natural or necessary ... concomitant[ ] or consequence...." Webster's Third International Dictionary 1135 (1981).

ment,[12] but also that he may bring a nonhabeas action for the very same purpose.[13] Indeed, suits for mandamus,[14] injunctive and declaratory relief [15] have all received judicial approval as means of addressing issues which today's decision renders appropriate only in habeas. It certainly seems to me, then, "that some instances remain where habeas corpus provides a supplementary but not an exclusive remedy." [16]

That being so, the critical question here is not the availability but rather the exclusivity of habeas to test the validity of an administratively-calculated parole eligibility date. If habeas is not exclusive, some other remedy likely can do service for Chatman–Bey. That he placed a mandamus label on the remedy he invoked alternatively would appear to be immaterial, for there seemingly is no reason why Chatman–

Bey's complaint should not be treated as a call for whatever relief may be in order.[17]

## II

Present-day caselaw on exclusivity of habeas corpus had its genesis fifteen years ago in the Supreme Court's decision in *Preiser v. Rodriguez.*[18] The State of New York maintained a conditional-release program by which a participating prisoner serving an indeterminate sentence could earn up to ten days of good-behavior credits per month. These credits would self-operate to reduce the maximum term of the prisoner's sentence, but could be withdrawn for bad behavior or infraction of institutional rules. Three inmates, each alleging an unconstitutional cancellation of credits accumulated in the program, brought independent Section 1983 actions [19]

12. *Johnson v. Avery,* 393 U.S. 483, 485–487, 89 S.Ct. 747, 749–750, 21 L.Ed.2d 718, 721–722 (1969); *Ex parte Hull,* 312 U.S. 546, 547–549, 61 S.Ct. 640, 640–642, 85 L.Ed. 1034, 1034–1036 (1941).

13. *Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964) (per curiam) (denial of permission to purchase certain religious publications, and withholding of other privileges enjoyed by fellow prisoners, solely because of inmate's religious beliefs); *Houghton v. Shafer,* 392 U.S. 639, 640–641, 88 S.Ct. 2119, 2120, 20 L.Ed.2d 1319, 1320–1321 (1968) (per curiam) (confiscation of legal materials acquired by inmate in order to pursue an appeal, but, in violation of prison rules, where in possession of another inmate); *Wilwording v. Swenson,* 404 U.S. 249, 250–252, 92 S.Ct. 407, 409, 30 L.Ed.2d 418, 421 (1971) (per curiam) (living conditions and disciplinary measures while in maximum security); *Haines v. Kerner,* 404 U.S. 519, 520–521, 92 S.Ct. 594, 595–596, 30 L.Ed.2d 652, 653–654 (1972) (per curiam) (solitary confinement and infliction of physical injuries while so confined). See *Preiser v. Rodriguez, supra* note 8, 411 U.S. at 498–499, 93 S.Ct. at 1840–1841, 36 L.Ed.2d at 455–456. These rulings have been rationalized on the ground that a prisoner's " 'conviction and incarceration deprive him only of liberties as the law has ordained he shall suffer for his transgressions.' " *Id.* at 505, 93 S.Ct. at 1844, 36 L.Ed.2d at 459 (dissenting opinion) (quoting *Coffin v. Reichard,* 143 F.2d 443, 445 (6th Cir.1944)). See also Note, *Developments in the Law—Federal Habeas Corpus,* 83 Harv.L.Rev. 1038, 1079–1087 (1970).

14. *Goode v. Markley,* 195 U.S.App.D.C. 391, 393–394 n. 4, 603 F.2d 973, 975–976 n. 4 (1979), *cert.*

denied, 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980) (provision of parole hearing); *United States ex rel. Schonbrun v. Commanding Officer, supra* note 10, 403 F.2d at 373–374 (challenge by reservist to order to report for active duty); *Holmes v. United States Bd. of Parole, supra* note 10, 541 F.2d at 1248; *Watts v. Hadden,* 489 F.Supp. 987, 989–990 (D.Colo.1980), *aff'd,* 651 F.2d 1354 (10th Cir.1981) (failure by Parole Commission to adhere to statutory requirements, including time for consideration of unconditional release).

15. *Gerstein v. Pugh,* 420 U.S. 103, 106–107, 95 S.Ct. 854, 859, 43 L.Ed.2d 54, 61 (1975) (suit by arrestees to obtain pretrial judicial probable cause hearings). See *Wolff v. McDonnell,* 418 U.S. 539, 554–555, 94 S.Ct. 2963, 2974, 41 L.Ed. 2d 935, 950 (1974).

16. *Preiser v. Rodriguez, supra* note 8, 411 U.S. at 506, 93 S.Ct. at 1845, 36 L.Ed.2d at 460 (dissenting opinion).

17. See *Wilwording v. Swenson, supra* note 13, 404 U.S. at 251, 92 S.Ct. at 409, 30 L.Ed.2d at 421 (habeas corpus petitions treated as § 1983 actions); *Long v. Parker,* 390 F.2d 816, 818–819 (3d Cir.1968) (§ 1983 action and habeas corpus petition treated as mandamus petition); *United States ex rel. Schonbrun v. Commanding Officer, supra* note 10, 403 F.2d at 374 (habeas corpus petition treatable as mandamus petition). As the court holds, venue is not a problem at this stage. Maj.Op. at 813 & n. 8.

18. *Supra* note 8.

19. Actions pursuant to 42 U.S.C. § 1983 (1982).

coupled with petitions for writs of habeas corpus, by which they sought restoration of their respective credits. Observing that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody,"[20] the Court concluded that the inmates' suits "fell squarely within this traditional scope of habeas corpus"[21] since

> [t]hey alleged that the deprivation of their good-conduct-time credits was causing or would cause them to be in illegal physical confinement, i.e., that once their conditional-release date had passed, any further detention of them in prison was unlawful; and they sought restoration of those good-time credits, which, by the time the District Court ruled on their petitions, meant their immediate release from physical custody.[22]

The Court further concluded that "even if restoration of [the inmates'] good-time credits had merely shortened the length of their confinement, rather than required immediate discharge from that confinement, their suits would still have been within the core of habeas corpus in attacking the very duration of their physical confinement itself.[23] Hence the ruling in *Preiser*, as put by the Court:

> [W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.[24]

*Preiser* did not, however, furnish a test enabling determination of just when a prisoner's lawsuit targets the "fact or duration" of his confinement, or seeks "immediate or sooner release" therefrom. The Court did, however, provide some guidance in that direction. "If a state prisoner is seeking damages," the Court said, "he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or some speedy release—the traditional purpose of habeas corpus."[25] Accordingly, "[i]n the case of a damages claim, habeas corpus is *not* an appropriate or available federal remedy."[26] Nor need a prisoner aggrieved by some condition of prison life resort to habeas for redress. Referring to earlier Section 1983 actions entertained for that purpose,[27] the Court explained that "none of the state prisoners in those cases was challenging the fact or duration of his physical confinement itself, and none was seeking immediate release or a speedier release from that confinement—the heart of habeas corpus;"[28] rather, "in all those cases, the prisoners' claims related solely to the States' alleged unconstitutional treatment of them while in confinement."[29] Upon the understanding "that a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody," those holdings were reaffirmed.[30]

The light left so dim by *Preiser* brightened considerably, however, as three more cases came before the Court.[31] During the succeeding term, in *Wolff v. McDonnell*,[32]

**20.** 411 U.S. at 484, 93 S.Ct. at 1833, 36 L.Ed.2d at 447.

**21.** *Id.* at 487, 93 S.Ct. at 1835, 36 L.Ed.2d at 448.

**22.** *Id.*

**23.** *Id.* at 487–488, 93 S.Ct. at 1835, 36 L.Ed.2d at 449.

**24.** *Id.* at 500, 93 S.Ct. at 1841, 36 L.Ed.2d at 456.

**25.** *Id.* at 494, 93 S.Ct. at 1838, 36 L.Ed.2d at 453.

**26.** *Id.* (emphasis in original).

**27.** See the cases cited *supra* note 13.

**28.** *Preiser v. Rodriguez, supra* note 8, 411 U.S. at 498, 93 S.Ct. at 1840, 36 L.Ed.2d at 455.

**29.** *Id.* at 498–499, 93 S.Ct. at 1841, 36 L.Ed.2d at 455.

**30.** *Id.* at 499, 93 S.Ct. at 1841, 36 L.Ed.2d at 455.

**31.** In referring to holdings opposing the arguments advanced in today's majority opinion, I do not mean to imply that complaining parties, having cleared the *Preiser* hurdle, were uniformly successful on the merits. The fact is that ofttimes they were not.

**32.** *Supra* note 15.

a prisoner advanced in a Section 1983 class action a claim that disciplinary proceedings at a Nebraska prison, which had led to cancellation of some of his good-time credits,[33] did not meet due process standards. As relief, the action requested restoration of the credits, new hearing procedures on proposals to withhold or forfeit such credits, and damages for denials of civil rights resulting from use of existing disciplinary procedures.[34] Addressing "[a]t the threshold ... the issue whether under *Preiser* ... the validity of the procedures for depriving prisoners of good-time credits may be considered in" Section 1983 litigation,[35] the Court noted that *Preiser* had foreclosed any restoration of such credits save in habeas,[36] but had expressly countenanced claims for damages in Section 1983 suits.[37] Accordingly, the Court said, that claim was appropriately presented,[38] "and required determination of the validity of the procedures employed for imposing sanctions, including loss of good time, for flagrant or serious misconduct."[39] Furthermore, the Court stated,

> [s]uch a declaratory judgment as a predicate to a damages award would not be barred by *Preiser;* and because under that case only an injunction restoring good time improperly taken is foreclosed, neither would it preclude a litigant with standing from obtaining by way of ancillary relief an otherwise proper injunction enjoining the prospective enforcement of invalid prison regulations.[40]

Therefore, the Court concluded, "it was proper ... to determine the validity of the procedures for revoking good-time credits and to fashion appropriate remedies for any constitutional violations ascertained, short of ordering the actual restoration of good time already canceled."[41] It is apparent that the outcome in *Wolff* would have been different had *Preiser* been interpreted as the majority of my colleagues do.

Two additional decisions of the Court make it even plainer that *Preiser* interposes no barrier to nonhabeas litigation of an asserted right to legally valid release procedures where the decision will not itself alter "the fact or duration of confinement" or effect an "immediate or sooner release" from custody. Within nine months after the ruling in *Wolff*, the Court, in *Gerstein v. Pugh*,[42] was faced with a Section 1983 class action by arrestees, who were in custody under Florida prosecutors' criminal informations, claiming a constitutional right to pretrial judicial hearings on probable cause to detain, and requesting declaratory and injunctive relief. Holding the form of action proper, the Court pointed out that the complainants.

> did not ask for release from state custody, even as an alternative remedy. They asked that the state authorities be ordered to give them a probable cause determination. This was also the only relief that the District Court ordered for [them].[43]

The Court held unanimously[44] that "[b]ecause release was neither asked nor ordered, the lawsuit did not come within the class of cases for which habeas corpus

---

**33.** By statute in Nebraska, flagrant or serious misconduct could result in forfeiture of good-time credits, which would affect the maximum term of imprisonment, or in confinement in a disciplinary cell which, of course, would alter the conditions of incarceration. Misconduct less than flagrant or serious would result only in deprivation of privileges. 418 U.S. at 547, 94 S.Ct. at 2970, 41 L.Ed.2d at 946 (footnote omitted).

**34.** *Id.* at 553, 94 S.Ct. at 2973, 41 L.Ed.2d at 949.

**35.** *Id.* at 554, 94 S.Ct. at 2973, 41 L.Ed.2d at 949.

**36.** *Id.* at 554, 94 S.Ct. at 2974, 41 L.Ed.2d at 950.

**37.** *Id.*

**38.** *Id.*

**39.** *Id.* at 554–555, 94 S.Ct. at 2974, 41 L.Ed.2d at 950.

**40.** *Id.* at 555, 94 S.Ct. at 2974, 41 L.Ed.2d at 950.

**41.** *Id.* (footnote omitted).

**42.** *Supra* note 15.

**43.** 420 U.S. at 107 n. 6, 95 S.Ct. at 859 n. 6, 43 L.Ed.2d at 61 n. 6.

**44.** This holding appears in Part I of the opinion for the Court, in which all Justices joined.

is the exclusive remedy." [45] And just four years later, in *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*,[46] the Court resolved on the merits another Section 1983 class action alleging that procedures utilized by Nebraska's Board of Parole denied due process, but none of the three opinions in the case questioned the propriety of the suit. In each of these two cases, victory for the complainants would have brought them a step closer to immediate or sooner release through habeas proceedings, and *Preiser* was no obstacle because that eventual result was not assured.

### III

Until today, this circuit's precedents [47] paralleled the developments in the Supreme Court from *Preiser* onward. In *Guerra v. Meese*,[48] we reversed an order of the District Court admitting seven federal prisoners confined outside the District of Columbia to bail pending a decision on the merits of their challenge to the validity of a parole eligibility date fixed by the Commission. Since the court could not have ordered *release* of the prisoners even if they ultimately prevailed, but could only have directed "the [Commission] to correct the abuses or wrongful conduct within a fixed period time," [49] bail as interim relief was unavailable.[50] On the other hand, without mention of *Preiser*, in *Pickus v. United States Board of Parole* [51] we deemed appropriate a suit for an injunction directing compliance with parole rulemaking procedures required by statute,[52] and in *Lykins v. United States Department of Justice* [53] we implicitly approved a prisoner's action seeking disclosure of documents in his parole file.[54]

In two other decisions, our rationale was set forth more vividly. In *Goode v. Markley*,[55] a federal prisoner incarcerated in West Virginia petitioned alternatively for writs of habeas corpus and mandamus compelling the warden of that facility to afford a parole hearing on the earlier of two consecutive sentences. We noted that "[t]he mandamus provision [56] ... permits courts to compel an administrative officer to perform a duty owed the plaintiff," [57] and "that if Goode demonstrated that Warden Markley was bound by statute to provide her with a hearing on parole from her [earlier] sentence the district court would have jurisdiction to proceed, and upon a showing that the Warden indeed failed to provide the required hearing would be authorized to issue a writ compelling adherence to the statute." [58] And while in *Monk v. Secretary of Navy*,[59] we held that a Marine corporal found guilty in a general court-martial of murder and imprisoned in Kansas could attack his conviction only in a habeas action,[60] we registered our under-

---

**45.** 420 U.S. at 107 n. 6, 95 S.Ct. at 859 n. 6, 43 L.Ed.2d at 61 n. 6 (citations to *Preiser* and *Wolff* omitted).

**46.** 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).

**47.** I exclude from this category *In re United States Parole Comm'n, supra* note 1; *In re Chatman–Bey (Chatman–Bey I)*, 231 U.S.App.D.C. 72, 718 F.2d 484 (1983); and *Chatman–Bey v. Meese (Chatman–Bey II)*, 254 U.S.App.D.C. 320, 797 F.2d 987 (1986), to the extent vacated, see 261 U.S.App.D.C. 301, 821 F.2d 789 (1987) (*en banc*).

**48.** 252 U.S.App.D.C. 1, 786 F.2d 414 (1986).

**49.** *Id.* at 5, 786 F.2d at 418 (quoting *Billiteri v. Board of Parole*, 541 F.2d 938, 944 (2d Cir. 1976)).

**50.** *Guerra v. Meese, supra* note 48, 252 U.S.App. D.C. at 4–5, 786 F.2d at 417–418.

**51.** 165 U.S.App.D.C. 284, 507 F.2d 1107 (1974).

**52.** *Id.* at 291, 507 F.2d at 1114. See also *Pickus v. United States Bd. of Parole*, 177 U.S.App.D.C. 93, 94, 543 F.2d 240, 241 (1976).

**53.** 233 U.S.App.D.C. 349, 725 F.2d 1455 (1984).

**54.** *Id.* at 351, 725 F.2d at 1457.

**55.** *Supra* note 14.

**56.** 28 U.S.C. § 1361 (1982).

**57.** 195 U.S.App.D.C. at 393 n. 4, 603 F.2d at 675 n. 4.

**58.** *Id.* at 393–394 n. 4, 603 F.2d at 675–676 n. 4.

**59.** 253 U.S.App.D.C. 293, 793 F.2d 364 (1986).

**60.** *Id.* at 295–296, 793 F.2d at 366–368.

standing of the critical difference between *Preiser* and *Wolff*:

> This disposition [in *Wolff*] is entirely consistent with *Preiser*. Relief other than restoration of credits would not result in the prisoner's immediate or speedier release from prison or in any way undermine the validity of the underlying conviction. Thus, under *Preiser*, the habeas provisions were not implicated.[61]

Outside this circuit are numerous holdings that a prisoner is not restricted to habeas when he does not challenge directly the fact or duration of his confinement, and success would not produce automatically immediate or earlier release, however much it might brighten the prospect thereof. Few would quarrel with rulings that an effort by a convicted inmate to obtain promptly a trial transcript essential to preparation of his appeal from the conviction need not proceed in habeas.[62] Just as

likely, concerns would not be heightened by Section 1983 requests for additional elucidation, but not an overturning, of parole decisions.[63] Nor, perhaps, would many be alarmed by an Army reservist's suit to annul an order to report for active duty when it is realized that he "does not seek ... to be discharged from membership in the armed forces," but "challenges only the order requiring him to report for active duty." [64] And certainly *Gerstein's* approval of a nonhabeas action to obtain a judicial hearing to determine probable cause to hold an adult in custody [65] fortifies the right of a detained juvenile to utilize the same technique.[66] More importantly, it is evident that the reasoning animating the post-*Preiser* decisions of the Supreme Court [67] and this circuit [68] stoutly underpins the propriety of invoking nonhabeas remedies to redress allegedly invalid parole procedures, as many cases have held.[69]

---

61. *Id.* at 296, 793 F.2d at 367.

62. *Qualls v. Shaw, supra* note 10, 535 F.2d at 319 ("the appellant is not challenging his conviction and he is not seeking his release from custody. He is claiming that he has been denied access to records which are made available to others and has been subjected to discriminatory treatment. Were he to prevail in this action the court's opinion would not impinge in any manner on the validity of his criminal conviction, and therefore habeas corpus is not an appropriate remedy and the district court's reliance on *Preiser* is misplaced"); *Rheuark v. Shaw,* 547 F.2d 1257, 1258–1259 (5th Cir.1977) (to same effect); *Lumbert v. Finley,* 735 F.2d 239, 242 (7th Cir.1984) ("Lumbert has neither directly challenged the fact of his confinement nor sought a determination that he is entitled to immediate or speedier release. To argue that the provision of the transcript might have resulted in a successful appeal of Lumbert's murder conviction, a new trial, and possible acquittal, and thereby would have indirectly affected the fact of his confinement, is to speculate in a Palsgrafian fashion that provides too tenuous a basis for the determination whether an action properly is characterized as an exclusive habeas corpus action") (footnote omitted).

63. See *Haymes v. Regan,* 525 F.2d 540, 542 (2d Cir.1975) (statement of reasons for decision, essential facts upon which it was based, and criteria observed in reaching it); *Huggins v. Isenbarger,* 798 F.2d 203, 204 (7th Cir.1986) (per curiam) (claim that reason assigned was too general to comply with due process).

64. *United States ex rel. Schonbrun v. Commanding Officer, supra* note 10, 403 F.2d at 373–374 ("[w]hether or not habeas corpus is available, the district court was free to treat the petition as one for mandamus under 28 U.S.C. § 1361").

65. See text *supra* at notes 42–45.

66. *Fernandez v. Trias Monge,* 586 F.2d 848, 852 n. 4 (1st Cir.1978) (habeas corpus not exclusive remedy when "plaintiff [does] not seek release from detention but simply an order mandating a probable cause hearing," and "[a]lthough that hearing might ultimately result in plaintiff's release, if probable cause is found wanting, that result is clearly not inevitable") (citations omitted).

67. See text *supra* at notes 31–46.

68. See text *supra* at notes 47–61.

69. *Williams v. Ward,* 556 F.2d 1143, 1150 (2d Cir.1977) (addressing state parole board's failure to provide prisoner with copies of allegedly derogatory letters supposedly contained in his parole file; rejecting argument "that because Williams' object in this action was ultimately to gain release from prison through a new parole hearing unaffected by disputed material in his institutional files, his action should have been treated as one for habeas corpus under *Preiser* ..."; and holding that "[a]lthough the relief sought by petitioner may improve his chances for parole, the question of his release and of the length of his confinement still lies within the sound discretion of the board ..."); *Georgevich v. Strauss,* 772 F.2d 1078, 1087 (3d Cir.1985) (*en*

## IV

*Preiser* held that habeas corpus is the exclusive federal remedy available to a prisoner who attacks the fact or duration of his confinement and who would become entitled to immediate or sooner release should he prevail. The *Preiser* inmates were clearly barred by that principle, for the object of their suit was a restoration of good-time credits which would have reduced the maximum term of their respective sentences. Chatman–Bey, on the other hand, desires no more than a properly calculated parole eligibility date—a date upon which he first will be considered for parole. An earlier date than he now has would not necessarily mean an earlier release from prison, for that would depend upon the parole decision to be made. The question we must answer is whether *Preiser* is limited to situations in which success in the particular lawsuit would directly and automatically bring about immediate or sooner release from custody or, instead, extends as well to those in which the outcome would produce something less.

Much in *Preiser* itself indicates the former. The majority opinion therein referred repeatedly to cases challenging "the very fact or duration of [a prisoner's] physical imprisonment" and seeking "a determination that he is entitled to immediate release or a speedier release from that imprisonment." [70] These cases, the Court declared, are of the "essence" and at the "core" or "heart" of habeas,[71] "go[ing] directly to the [validity] of his physical confinement itself" [72] and asking for "a determination that he is entitled to immediate release or a speedier release" therefrom.[73] There is not the slightest hint in *Preiser* that cases lacking those features are intercepted.[74] More-

banc), *cert. denied*, 475 U.S. 1028, 106 S.Ct. 1229, 89 L.Ed.2d 339 (1986) (§ 1983 suit available to challenge state parole procedures on equal protection grounds because "the fact that a prisoner's success in the litigation might increase the chance for early release does not, in itself, transform the action into one for habeas corpus"); *Strader v. Troy,* 571 F.2d 1263, 1269 (4th Cir.1978) (treating state prisoner's *pro se* habeas pleading as a suit under § 1983, "Strader does not assert that he is entitled to parole and should be released; he argues only that the parole board should consider his eligibility for parole without regard to his four allegedly invalid Virginia convictions. He also does not assert that if the four convictions are not considered he will be entitled to parole, now or ever"); *Johnson v. Pfeiffer,* 821 F.2d 1120, 1123 (5th Cir.1987) (§ 1983 available for state inmate's attack on parole practices as invalid because "[v]ictory ... would not entitle any member of [inmate's] proposed classes to automatic release," but, "[a]t most, the consequences of his suit would be a requirement that the Parole Board refrain from using unconstitutional customs, rules, and procedures when making parole decisions"); *Shaw v. Brisco,* 526 F.2d 675, 676 (5th Cir.1976) (per curiam) (state inmates could test constitutionality of state board's parole procedures in § 1983 action; district court's ruling that such relief would have the effect of releasing prisoners rejected); *Walker v. Prisoner Review Bd.,* 694 F.2d 499, 501 (7th Cir.1982) (§ 1983 action appropriate for attack on parole practices, although "the relief sought might have improved petitioner's chances of parole," for "the question of release still would remain within the discretion of the parole board") (citations omitted); *Holmes v. United States Bd. of Parole, supra* note 10, 541 F.2d at

1248 (assuming availability of habeas, federal prisoner could resort to mandamus to assert due process violation by classification as special offender, which affected chances for parole, without opportunity to learn of and contest evidence against him); *Candelaria v. Griffin* 641 F.2d 868, 869 (10th Cir.1981) (per curiam) ("[w]e construe plaintiff's petition as a challenge to the fairness of parole procedures and not a demand for immediate release pursuant to parole"); *Watts v. Hadden, supra* note 14, 489 F.Supp. at 989–990 (mandamus appropriate to remediate failures by Parole Commission to adhere to requirements of Federal Youth Corrections Act, including point in time for consideration of unconditional release).

**70.** *Preiser v. Rodriguez, supra* note 8, 411 U.S. at 500, 93 S.Ct. at 1841, 36 L.Ed.2d at 456.

**71.** *Id.* at 484, 487, 489, 498, 93 S.Ct. at 1833, 1835, 1836, 1840, 36 L.Ed.2d at 447, 449, 450, 455.

**72.** *Id.* at 489, 93 S.Ct. at 1836, 36 L.Ed.2d at 450.

**73.** *Id.* at 500, 93 S.Ct. at 1841, 36 L.Ed.2d at 456.

**74.** As examples of prisoner cases that *must* be brought in habeas, the Court listed those asserting "that the statute under which he stands convicted is unconstitutional[;] ... that he has been imprisoned prior to trial on account of a defective indictment against him[;] ... that he is unlawfully confined in the wrong institution[;] ... that he was denied his constitutional rights at trial[;] ... that his guilty plea was invalid[;] ... that he is being unlawfully detained by the

over, the *Preiser* Court put aside claims for damages with the explanation that the claimant "is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release;"[75] it distinguished, too, complaints about prison conditions on the ground that they "relate[] solely to ... alleged ... treatment ... while in confinement"[76] and do not "challenge the very fact or duration of the confinement itself."[77] The crowning factor is that but for a restrained reading, the declaration and injunction discussed in *Wolff,*[78] the request for the probable cause hearing in *Gerstein,*[79] and the assault on parole procedures in *Greenholtz*[80] would all have collided with *Preiser* unless litigated in the context of habeas corpus.

My colleagues in the majority ignore these important considerations and the imposing array of decisions heeding them,[81] and solicit support from other quarters. They refer to the expansion of habeas corpus in modern times[82] and to its character as a specific remedy,[83] and urge that "*Preiser* cannot ... be limited to the specific facts of that case...."[84] To be sure, the scope of federal habeas corpus has widened remarkably since the days of the common law, and much of its nature is spelled out statutorily. Nonetheless, until today, the remedial exclusivity of habeas had yet to be extended to cases lacking the potential to affect a period of assertively

unlawful custody. Nor can I agree that *Preiser* is to be read broadly when the *Preiser* Court itself admonished that the complaining prisoners "sought ... only equitable relief—restoration of their good-time credits—and our holding today is limited to that situation."[85] The majority's stance fails to distinguish parole *eligibility* from parole *entitlement,* and treats any step toward lawful parole procedures as a headlong assault upon confinement.

Chatman–Bey contends for no more than a parole eligibility date determined in accordance with governing statutes. He does not ask for immediate or earlier release from custody, nor can his suit, without more, produce that result. The very most it could garner is a new date upon which he will be considered for parole, with no guarantee that it would actually be granted. This "*possibility* of parole provides no more than a mere hope that the benefit will be obtained,"[86] and is a far cry from the inevitability of release that *Preiser* contemplates.

Executive or military[;] ... [and] that his parole was unlawfully revoked...." *Id.* at 486, 93 S.Ct. at 1834, 36 L.Ed.2d at 448 (citations omitted). As the Court observed "in each case his grievance is that he is being unlawfully subjected to physical restraint, and in each case habeas corpus has been accepted as the specific instrument to obtain release from such confinement. *Id.*

75. *Id.* at 494, 93 S.Ct. at 1838, 36 L.Ed.2d at 453.

76. *Id.* at 499, 93 S.Ct. at 1841, 36 L.Ed.2d at 455.

77. *Id.*

78. See text *supra* at notes 32–41.

79. See text *supra* at notes 42–45.

80. See text *supra* following note 46.

81. See Parts II, III *supra.* The majority opinion dismisses *Wolff, Gerstein* and *Greenholtz* with the observation that each involved the so-called "*Preiser* dilemma." Maj.Op. at 810 n. 5. In determining in these cases the propriety of remedies, the Supreme Court indulged the "*Preiser* dilemma" no role whatsoever.

82. Maj.Op. at 806–807.

83. *Id.* at 808–809.

84. *Id.* at 809.

85. *Preiser v. Rodriguez, supra* note 8, 411 U.S. at 494, 93 S.Ct. at 1838, 36 L.Ed.2d at 453.

86. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, supra* note 46, 442 U.S. at 11, 99 S.Ct. at 2105, 60 L.Ed.2d at 677 (emphasis in original) (citations omitted).