Kevin **RAZZOLI**, Appellant,

v.

**FEDERAL BUREAU OF PRISONS**
**and United States Parole**
**Commission, Appellees.**

No. 99–5289.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 25, 2000.

Decided Nov. 7, 2000.

Anthony F. Shelley, appointed by the court, argued the cause as amicus curiae for appellant. With him on the briefs was John D. Bates.

Kevin Razzoli, appearing pro se, was on the briefs for appellant.

Madelyn E. Johnson, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were Wilma A. Lewis, U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attorney.

Before: WILLIAMS, RANDOLPH and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

This appeal puts in question the relationship between an *en banc* decision of this court and two recent Supreme Court cases. The latter require a prisoner to succeed in a habeas action before bringing a claim that challenges, even indirectly, the

duration of his custody—for example a damages claim for due process violations made in the course of a decision revoking good time credit. See *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). *Balisok* has been read as mandating the use of habeas *only* when the claim, if successful, will *inevitably necessitate* invalidation of a decision creating, extending, or refusing to curtail custody. But in *Chatman-Bey v. Thornburgh,* 864 F.2d 804 (D.C.Cir.1988), we found that habeas was the exclusive remedy even where a claim's impact on custody was only probabilistic. *Chatman–Bey* itself involved a decision on parole *eligibility,* a necessary but not sufficient step toward the actual grant of parole. Concluding that there is no inescapable conflict between *Chatman-Bey* and the later Supreme Court decisions, we adhere to *Chatman-Bey*: for a federal prisoner, habeas is indeed exclusive even when a non-habeas claim would have a merely probabilistic impact on the duration of custody.

* * *

Appellant Kevin Razzoli is a federal prisoner serving a sentence for attempted murder. He challenges an order by the district court dismissing his claims against the Federal Bureau of Prisons ("BOP") and the United States Parole Commission for declaratory relief and damages under the Privacy Act, 5 U.S.C. § 552a, and the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").

Razzoli's current troubles started when a prison official at the Allenwood Federal Correctional Institution claimed that on July 23, 1995 he had found cocaine and a razor blade in Razzoli's cell. After a Unit Disciplinary Committee hearing, Razzoli received a sanction that included the loss of 60 days statutory good time credit. A report on the incident was forwarded to the FBI for investigation, but no new criminal charges were brought against Razzoli. After the Disciplinary Committee action, but based on the same events, the United States Parole Commission with-

drew Razzoli's recommended parole release date and established a new date twenty-four months later, in effect delaying his eligibility for parole by two years.

Razzoli filed a *pro se* complaint in district court here, alleging that the BOP staged the incident on which the actions of the Disciplinary Committee and Parole Commission were based. Although the complaint does not highlight the difference, it suggests that the Disciplinary Committee found him guilty only of possession and that the Parole Commission found him guilty of possession with intent to distribute. It further alleges that the Parole Commission conspired with the BOP and knowingly used false information against Razzoli. The complaint says that Razzoli never received a copy of any FBI report and suggests that the report must not have supported the Parole Commission's determination.

■ Before the complaint was served on either of the federal defendants, the district court dismissed the case *sua sponte* for failure to state a claim on which relief could be granted. The court found that Razzoli's claims amounted to collateral attacks on the actions of the Disciplinary Committee, and that under *Balisok* and the key predecessor cases of *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), "the sole federal remedy for challenging the loss of good time credit is a petition for habeas corpus." *Razzoli v. Federal Bureau of Prisons* No. 99–1711 (D.D.C. July 30, 1999). Under *Balisok,* a non-habeas civil action by a prisoner is not cognizable where " 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." *Balisok,* 520 U.S. at 643, 117 S.Ct. 1584 (quoting *Heck,* 512 U.S. at 487, 114 S.Ct. 2364).

■ We review the district court's dismissal for failure to state a claim *de novo*. See *Davis v. District of Columbia*, 158 F.3d 1342, 1348 (D.C.Cir.1998). Dismissal under Rule 12(b)(6) is proper if, taking all the material allegations of the complaint as admitted and construing them in plaintiff's favor, we find that he has failed to allege each of the material elements of his cause of action. See *Taylor v. Federal Deposit Insurance Corp.*, 132 F.3d 753, 761 (D.C.Cir.1997); see also *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994). In addition, we are bound to read the filings of a *pro se* litigant liberally. See *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Richardson v. United States*, 193 F.3d 545, 548 (D.C.Cir.1999). The application of *Preiser, Heck,* and *Balisok* complicates our task, for we must find allegations that are not only sufficient to make out claims under the statutes, but that also do not trigger the habeas-channeling rule. We appointed amicus curiae to argue the issues for appellant.

The theory of Razzoli's Privacy Act claim is that BOP and the Parole Commission violated 5 U.S.C. § 552a(e)(5) by maintaining in their files and using a false record, the report of the drug possession incident, even though they knew it to be false. We read the Privacy Act part of the complaint as having two dimensions, one clearly running afoul of *Balisok*, the other not so clearly.

■ What clearly runs afoul of *Balisok* is his apparent claim in relation to the recision of good time. If BOP knowingly preserved and acted upon a totally invented record of drug possession, plainly the recision of good time would have to be overturned, thus accelerating Razzoli's release. Indeed, Razzoli has already brought such a claim in the Middle District of Pennsylvania in the form of an action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and the Third Circuit has found it

barred under the *Balisok* doctrine. See *Razzoli v. Swinson*, No. 97–7558, slip op. at 4–6, 225 F.3d 650 (3rd Cir. June 1, 2000).

■ But the amicus contends that Razzoli frames a second attack that implicates only the determination by the Parole Commission to postpone his parole eligibility. Under this reading, Razzoli is arguing that the Parole Commission decision was based on additional inaccuracies in his record—the absence of the FBI report and the addition of "intent to distribute" to the possession charge. The government resists this interpretation, but we think it within the range of plausible interpretations given the alleged absence of the FBI report from the record, the complaint's explicit attacks on the decision of the Parole Commission, and the distinction (slightly submerged, to be sure) between the Disciplinary Committee's charge of possession and the Parole Commission's finding of possession with intent to distribute.

The Supreme Court's trilogy addressing the relation between petitions for habeas corpus and other prisoner claims began with *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). State inmates who had been deprived of good time credit in prison disciplinary proceedings brought actions under 42 U.S.C. § 1983 seeking injunctive relief to compel restoration of the credit. The Court saw "the essence" and "traditional function" of habeas as being "to secure release from illegal custody." *Id.* at 484, 93 S.Ct. 1827. The Court found that an attack on revocation of good time qualified as an attempt to secure such release. Such an attack is "just as close to the core of habeas corpus as an attack on the prisoner's conviction, for it goes directly to the constitutionality of his physical confinement itself and seeks either immediate release from that confinement or the shortening of its duration." *Id.* at 489, 93 S.Ct. 1827. More critically, the Court found that the habeas remedy was exclusive. Comparing the general

language of § 1983 with the specificity of the habeas statute and focusing on Congress's clear intent to assure exhaustion of state remedies in the latter, it found a congressional intent to provide only one remedy for attacks on physical confinement. *Id.* at 489–92, 93 S.Ct. 1827.

In *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Court extended *Preiser* to cover a prisoner's § 1983 claim for *damages* for alleged constitutional violations in his arrest and conviction, observing that "establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction." *Id.* at 481–82, 93 S.Ct. 1827. The Court went on to hold that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Id.* at 486–87, 93 S.Ct. 1827. Finally, *Balisok* extended *Preiser* and *Heck* to cover a § 1983 damages action for *procedural* violations allegedly committed in a prison disciplinary hearing that deprived the plaintiff prisoner of good time credits. The Court rejected any distinction between procedural and substantive claims, saying that any such distinction "disregards the possibility, clearly envisioned by *Heck,* that the nature of the challenge to the procedures could be such as necessarily to imply the invalidity of the judgment." *Id.* at 645, 117 S.Ct. 1584.

In each of the cases of the trilogy, the plaintiff's establishment of his claim would itself have been sufficient to *entitle* him to earlier release—subject, at least in the *Balisok* case, to the possibility of renewed revocation of the good time credit in a new hearing untainted by constitutional error. See *Balisok,* 520 U.S. at 647, 117 S.Ct. 1584. But in 1988 this court read *Preiser* to require habeas for a federal prisoner's attack on a parole eligibility decision, reversal of which would merely give him a

chance at earlier parole. *Chatman-Bey v. Thornburgh,* 864 F.2d 804 (D.C.Cir.1988). We recognized both of the case's arguable distinctions from *Preiser*: first that Chatman-Bey was a federal prisoner and second that success on his stated claim would not lead either to immediate release or to a definite reduction in sentence. *Id.* at 808–10. We also rejected both, relying on the *Preiser* Court's finding of a congressional determination that habeas be the exclusive means for challenging the fact or duration of custody. *Id.* at 808 n. 4 ("in the most practical sense, parole eligibility 'implicates' the duration of confinement"). Application of *Chatman-Bey* here funnels plaintiff's claim into habeas.

The amicus would have us hold that *Chatman-Bey* is no longer controlling. In *Anyanwutaku v. Moore,* 151 F.3d 1053 (D.C.Cir.1998), we read the *Preiser* trilogy as *not* requiring habeas for a District of Columbia prisoner's § 1983 attack on an adverse parole eligibility decision. Instead, we saw it as barring a § 1983 claim "only when, if successful, it would 'necessarily imply,' or automatically result in, a speedier release from prison." *Id.* at 1056. We distinguished *Chatman-Bey* on the ground that it involved a federal prisoner, and said that we need not consider whether it had any "continuing vitality after *Heck* and *Balisok.*" *Id.* at 1057. Now we must.

Of course a Supreme Court decision flatly contradicting an earlier circuit precedent would control. See *Dellums v. United States Nuclear Regulatory Comm'n* 863 F.2d 968, 978 n. 11 (D.C.Cir.1988). But, faced with the issue *Anyanwutaku* left open, we find no such flat contradiction. First, none of the cases in the trilogy *addressed* claims with a merely probabilistic impact on the duration of custody; thus none had occasion to rule definitely on whether such claims need be brought in habeas. Second, as we noted in *Chatman-Bey,* the Supreme Court has made clear that habeas is *proper* for such a claim. See *Braden v. 30th Judicial Circuit Court*

*of Kentucky,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), cited in *Chatman-Bey,* 864 F.2d at 807. Third, although the Ninth Circuit has read *Balisok* as inapplicable to attacks on parole eligibility decisions, saying that their success would not *guarantee* a reduction in confinement, *Neal v. Shimoda,* 131 F.3d 818, 824 (9th Cir.1997), the Seventh Circuit has given the trilogy a quite different reading, saying that it calls for habeas exclusivity whenever the proof necessary for a prisoner's claim "involves the proof of a fact that would also be essential to a habeas corpus action." *Clayton-EL v. Fisher,* 96 F.3d 236, 242 (7th Cir.1996); see also *id.* at 244. Fourth, *Chatman-Bey* made clear that a major implication of habeas exclusivity in cases involving federal prisoners was its impact on venue. See *Chatman-Bey,* 864 F.2d at 805, 810–14. In non-habeas federal prisoner actions, a plaintiff could almost always name a defendant over whom the district court for the District of Columbia would have personal jurisdiction. But a habeas challenge must be brought against the *custodian,* a rule that channels such claims into the federal court with jurisdiction over the claimant's prison. *Id.* That consequence is, of course, every bit as applicable here as in *Chatman-Bey* itself, but had little or no relevance to *Anyanwutaku;* even if *state* prisoners with probabilistic claims are relieved of the strictures of *Balisok,* the District of Columbia would generally not be a possible site for litigation.

■ Finding *Chatman-Bey* alive and at worst only modestly ailing, we conclude that Razzoli's Privacy Act claim—not only in regard to the good time decision but also in regard to parole eligibility—is not cognizable. In one respect, however, the district court erred on this claim: it should have been dismissed *without prejudice.* If Razzoli is successful in overturning the Disciplinary Committee and Parole Committee actions through a petition for habeas, he should be allowed to bring his Privacy Act claim at that time. See *Fottler v.*

*United States,* 73 F.3d 1064, 1065–66 (10th Cir.1996).

■ There remains Razzoli's FOIA claim. The district court concluded that not only the Privacy Act but also the FOIA claim was barred by *Heck* and *Balisok.* We do not see the logic. A FOIA claim wins, generally speaking, if the plaintiff has properly requested the document from the agency and no exemption applies. Razzoli evidently seeks the supposedly exonerating FBI report. Of course that report could possibly be helpful in both his good time and his parole eligibility claims. But a judicial finding that some agency must deliver this report to Razzoli would not itself establish some necessary element of those claims; so *Balisok* would not apply even under the comparatively broad reading that prevails in the Seventh Circuit. See *Clayton-EL v. Fisher,* 96 F.3d at 242.

■ Appellees contend that, quite apart from *Heck* and *Balisok,* Razzoli has failed to state a claim on which relief can be granted. In reviewing the decision of a lower court, we "can affirm a correct decision even if on different grounds than those assigned in the decision under review." *Danielsen v. Burnside–Ott Aviation Training Center, Inc.,* 941 F.2d 1220, 1230 (D.C.Cir.1991). This court has found that rule particularly applicable when reviewing a dismissal for "failure to state a claim, . . . a pure question of law which we review *de novo.*" See *id.* (citing *Securities and Exchange Comm'n v. Chenery Corp.,* 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943)).

■ Here, despite the efforts of the amicus to stretch our imaginations, we find little more in the complaint than a bald reference to the statute. Appellant mentions in passing that he did not receive the FBI report, but makes no reference to requests for this document. He later claims that he "has exhausted all other remedies available to him to attempt to correct the record, but was denied," but in the context of the complaint this seems to be a reference to the entire record of his cocaine possession. Complaint at 4, *Raz-*

*zoli v. Federal Bureau of Prisons,* No. 99 CV 1711 (D.D.C. June 27, 1999) Even giving the *pro se* plaintiff the benefit of every reasonable doubt, we cannot make out a FOIA claim from this complaint.

 The only question remaining is whether *sua sponte* dismissal without leave to amend was appropriate. The Prisoner Litigation Reform Act of 1995 not only allows but requires a district court to dismiss a prisoner's claim before the defendant answers if it finds that the complaint fails to state a claim. See 28 U.S.C. 1915A(b)(1). Even prior to the enactment of that statute, this court had approved of *sua sponte* dismissals for failure to state a claim in some circumstances. See *Baker v. Director, United States Parole Comm'n,* 916 F.2d 725, 726 (D.C.Cir.1990) (per curiam). But nothing has altered our longstanding rule that a *sua sponte* dismissal for failure to state a claim without leave to amend is reversible error unless "the claimant cannot possibly win relief." See *Davis v. District of Columbia,* 158 F.3d 1342, 1349 (D.C.Cir.1998) (quoting *Baker,* 916 F.2d at 726). This will be the case either when "the facts alleged affirmatively preclude relief, or because, even though plaintiff makes clear that he has facts to *add* to his complaint, he would not have a claim upon which relief could be granted even with those facts." *Id.* Neither of these formulations applies to Razzoli. Accordingly, although we agree with the judgment that Razzoli failed to state a claim, we must remand and order the district court to dismiss the complaint with leave to amend.

We vacate the order dismissing the Privacy Act claim with prejudice and remand for the district court to do so without prejudice. We also vacate the order dismissing the FOIA claim with prejudice and remand for the district court to dismiss with leave to amend.

*So ordered.*