Charles E. FORRESTER, Jr., Plaintiff,

v.

UNITED STATES PAROLE COMMISSION,[1], Defendant.

Civil Action No. 03cv1075 (RBW).

United States District Court, District of Columbia.

March 18, 2004.

1. When plaintiff initially filed his complaint, he named Edward F. Reilly, Commissioner of the United States Parole Commission, as the sole defendant. However, on August 13, 2003, plaintiff filed a Motion to Correct Caption and Substitute Defendant in Complaint, wherein he sought to name the United States Parole Commission as the sole defendant. Because the Court will grant this motion in the Order accompanying this Memorandum Opinion, it will not discuss defendant's arguments as it pertains to Mr. Reilly in his individual capacity, including plaintiff's alleged failure to serve Mr. Reilly in that capacity.

Charles E. Forrester, Jr, Winton, NC, pro se.

Joseph Alan Pixley, U.S. Attorney's Office, Civil Division, Washington, DC, for Defendant.

## MEMORANDUM OPINION

WALTON, District Judge.

Plaintiff Charles E. Forrester, Jr., who is proceeding *pro se,* has brought this action challenging the decision by the United States Parole Commission (the "Commission") to deny him parole and seeks to compel the Commission to expunge inaccurate information maintained in its records. Defendant has filed a motion to dismiss plaintiff's complaint. For the reasons set forth below, the Court will grant the defendant's motion.

### I. Factual Background

According to the record in the plaintiff's underlying criminal case, on July 8, 1991, the plaintiff told his co-defendant, Deon Adams, that he had money for him but he needed his help hauling some trash. Defendant's Motion to Dismiss ("Def.'s Mot."), Exhibit ("Ex.") B (Presentence Report re: Charles E. Forrester, at 3). When the two arrived at two vacant buildings located at Alabama Avenue and Smith Place, in Southeast, Washington, D.C., plaintiff told Adams that he would not pay Adams the money he owed him unless Adams assisted plaintiff in setting fire to the two buildings. *Id.* Adams agreed and proceeded to set one of the buildings on

fire while the plaintiff set the other building on fire. As Adams was exiting the building he had set on fire, the plaintiff threw gasoline on him, and set him on fire. *Id.* Adams was seriously injured but he survived his injuries.[2]

Both the plaintiff and Adams were charged with two counts of destruction of property and two counts of arson. *Id.* at 4. Adams pled guilty to one count of felony destruction of property, and testified against plaintiff at his trial. *Id.* Plaintiff was found guilty of destruction of property, arson, assault with intent to kill, and malicious disfigurement. *Id.* at 5. Plaintiff was sentenced "to an aggregate prison term of [nine to] twenty-seven years...."[3] Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss ("Def.'s Mem.") at 3–4; Def.'s Mot., Ex. A (Superior Court of the District of Columbia Judgment and Commitment/Probation Order dated March 1, 1994).

On January 12, 1999, plaintiff's initial parole hearing was held. Compl. at 3.[4] At this hearing, plaintiff stated "that he accept[ed] full responsibility for [his] crime[,]" however, he also denied pouring gasoline on Adams and stated that Adams set the fires, not plaintiff. Def.'s Mot., Ex.

**2.** It is believed that because plaintiff heard fire engines in the area, he panicked, thinking the fire engines were responding to his location, and rushed Adams to the hospital. Def.'s Mot., Ex. B, at 4. As a result of plaintiff's actions, Adams sustained burns to over 65% of his body, suffering fourth degree burns to his hands and arms and second degree burns to his back, legs, buttocks and face. *Id.* Adams will be disfigured for the remainder of his life. *Id.*

**3.** The government neglected to indicate that at the time plaintiff's sentence was imposed, the District of Columbia sentencing scheme required the imposition of both minimum and maximum terms of incarceration.

**4.** References to "Compl." are to the plaintiff's form and handwritten complaint filed with this Court on May 14, 2003. Plaintiff's complaint consists of a form complaint and his memorandum of points and authorities, which contains his substantive arguments. Because the pages of the plaintiff's memorandum of points and authorities were not numbered, references to the page numbers of the memorandum as assigned by the Court are based on the sequential order in which they were presented to the Court. Because the Court never references the pages of the form complaint in this opinion, these pages of the form were not included in the pages of the complaint to which numbers have been assigned by the Court.

C (D.C. Initial Hearing Summary) at 1. Based on plaintiff's prior criminal history and his current offense, minus two points for superior program achievement, the hearing examiner awarded plaintiff a total point score of 2. *Id.* (D.C.Code Point Assignment Sheet) at 2. However, the hearing examiner stated that based on the plaintiff's current offense, in addition to "1 previous conviction for malicious destruction and battery, it appears that the subject does pose a more serious risk than reflected by the point score of 2." *Id.* at 3. Thereafter, on February 17, 1999, plaintiff was issued a Notice of Action indicating that he was being denied parole. Def.'s Mot., Ex. D (Notice of Action dated February 17, 1999) at 1. While based on his Total Point Score "[t]he guidelines for adult offenders ... indicate[d] that parole should be granted at th[at] time[,]" the Commission determined that parole should be denied because it concluded:

> [Plaintiff] [is] a more serious risk than indicated by [his] Total Point Score in that [he] demonstrated the mentality of a ruthless professional criminal, which [he] confirmed by refusing to accept responsibility at [his] parole hearing. In addition to setting fire to a building, [plaintiff's] deliberate act of throwing gasoline on [his] codefendant and lighting him on fire demonstrates extreme brutality to the victim. The apparent reason for [his] heinous actions were to obstruct justice by silencing a key witness and thus eliminating evidence to be used against [him] in a court of law. As a result of [his] actions the victim was left permanently disfigured. Further, [his] actions that involved setting two

> buildings on fire had the effect of endangering the lives of emergency fire fighters. . . .

> After a consideration of all factors and information presented, a departure from the rehearing guidelines at this consideration [sic] is warranted for the following reasons: It is unlikely that continued positive program performance will be a meaningful indication of acceptable risk for release on parole in [plaintiff's] case in light of the serious long term risk factors described above.

*Id.* at 1. A parole rehearing date was initially scheduled for September 22, 2004, and after several corrections,[5] was scheduled for "March 2004, after the service of 60 months from [plaintiff's] parole eligibility date of March 23, 1999." *Id.;* Def.'s Mot., Ex. H (Notice of Action dated June 2, 2001).

On June 7, 2000, the Commission issued a Notice of Action informing plaintiff that his "salient factor score" was being "changed from a 9 to a 10 because the offense in case number CA–892113X did not result in a conviction as the Commission had been informed." Def.'s Mot., Ex. G (Notice of Action dated June 7, 2000). Plaintiff was informed that this change did "not affect [his] base point score or [his] total point score and [did] change the Parole Commission's decision to deny parole. . . ." *Id.* On April 23, 2003, plaintiff wrote a letter to Edward F. Reilly, Chairman of the Commission, to state that the inaccurate information concerning the state conviction still remained in his parole file. Compl., Ex. 3 (Letter to Edward F. Reilly from Charles E. Forrester, dated

---

**5.** On March 4, 1999, the Commission issued a notice of corrected action, which indicated that based on the computation of plaintiff's sentence, the rehearing date was scheduled to occur in August, 2004. Def.'s Mem. at 5; Def.'s Mot., Ex. E (Notice of Action dated March 4, 1999). Thereafter, on November 1, 1999, a second amended notice of action was issued scheduling the rehearing date for June, 2004. *Id.;* Def.'s Mot., Ex. F (Notice of Action dated November 1, 1999).

April 28, 2003) at 1. Specifically, plaintiff noted that while the initial hearing report indicated that plaintiff had "1 previous conviction for malicious destruction and battery," in actuality the charge had been dismissed by the prosecutor, and thus there was no prior conviction. *Id.* at 2. Plaintiff requested that the inaccurate information be "expunged from [his] parole file immediately, especially in light of the fact that [he is] scheduled to have [his] parole reconsideration hearing in March 2004." *Id.*

On May 14, 2003, plaintiff filed his complaint in this Court. Plaintiff advances several arguments as grounds for the relief he is requesting. First, he alleges that he has a viable claim pursuant to 42 U.S.C. § 1983 (2000), because when the Commission applied the "harsher, federal preponderance of the evidence standard .... to determine plaintiff's suitability for release on parole[,]" it violated his civil rights because, as a District of Columbia offender, the Commission should have applied the District of Columbia "parole laws and regulations." Compl. at 5. Alternatively, plaintiff states that he brings this lawsuit pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706 (2000), because the defendant's decision to apply the harsher federal standard to him was arbitrary and capricious. *Id.* at 4–5. Finally, plaintiff asserts a claim pursuant to the Privacy Act, 5 U.S.C. § 552a(e)(5) (2000), for the defendant's failure to expunge the information that incorrectly indicates that he had a prior felony conviction from his parole file. *Id.* at 21–22. Plaintiff seeks, *inter alia*, an "injunction/declaratory judgment against the Commission, compelling the agency to conduct an immediate parole hearing ... in which it employ[s] all applicable D.C. pa-

role laws and regulations...." *Id.* at 27, ¶ 3.

## II. Defendant's Motion to Dismiss

Defendant has filed a motion seeking dismissal of plaintiff's complaint. First, defendant argues that plaintiff seeks early release from confinement and, therefore, plaintiff's sole avenue for relief is to file a petition for a writ of habeas corpus. Def.'s Mem. at 6. However, because plaintiff previously filed a petition for writ of habeas corpus or, alternatively, a writ of mandamus, in the United States District Court for the Eastern District of Virginia, which the district court denied, defendant further contends that plaintiff is barred from pursuing such relief again pursuant to the Supreme Court's decision in *McCleskey v. Zant*, 499 U.S. 467, 494, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), or alternatively, on res judicata grounds. *Id.* at 8–9. Next, defendant argues that plaintiff cannot bring a § 1983 claim against the federal defendants because the statute "only applies to state officials acting under color of state law." *Id.* at 11 (citation omitted). Furthermore, defendant asserts that plaintiff cannot obtain monetary damages because such relief is barred by the doctrine of sovereign immunity. *Id.* at 12. Finally, defendant contends that plaintiff's Privacy Act claim lacks merit because "[t]he Commission is not required to expunge records from an inmate's file and more importantly, ... the information has not been relied upon in making a decision in [plaintiff's] case." *Id.* at 23 (citation omitted).

Plaintiff takes exception to all of defendant's arguments.[6] First, plaintiff contends that he "did not bring his § 1983 [action] to challenge the *fact* or *duration* of his imprisonment[,]" and thus he is not limited to seeking habeas relief. Plaintiff's

---

**6.** The Court notes that plaintiff's pleadings, although handwritten, are thorough and re-

spond appropriately to the defendant's arguments.

Reply [sic] to the Defendant's Motion to Dismiss Plaintiff's Complaint ("Pl.'s Opp'n") at 2. Rather, according to plaintiff, he initiated this lawsuit to challenge "the Commission's prohibited application of the federal parole regulation ... upon plaintiff, which denied him a *fair* and *impartial* parole procedure...." *Id.* at 2–3. Second, plaintiff argues that he has asserted a cognizable claim under the APA "because the Commission has employed a wholly federal standard upon plaintiff during the course of his initial parole hearing, [and therefore] the Court [should] ... conclude that the Commission has arbitrarily and capriciously abused its discretion...." *Id.* at 11. Plaintiff further argues that res judicata should not be "employed ... to defeat the ends of justice or so as to work an injustice." *Id.* at 10. Third, as to his Privacy Act claim, plaintiff maintains that because the hearing examiner "considered false information to recommend that plaintiff be denied parole ... [a] reasonable fact finder would infer that the examiner and the Commissioners' decision making process was tainted with the use of a wholly false felony conviction...." *Id.* at 16–17. Finally, plaintiff argues that because the Commission has not expunged the false information, even after plaintiff notified the Commission of this fact, the Court should exercise its discretion and require the agency to expunge this false information from plaintiff's parole files. *Id.* at 24.

## III. Analysis

### A. Standard of Review

 As indicated, defendant seeks dismissal of plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(1) (lack of subject matter jurisdiction).[7] Def.'s Mot. at 1. Defendant also clearly invokes Fed.R.Civ.P. 12(b)(6), as it argues that plaintiff has failed to state a claim under § 1983 or the Privacy Act. As to defendant's jurisdictional challenge, Federal Rule of Civil Procedure 12(b)(1) permits dismissal of a complaint if the Court "lack[s] jurisdiction over the subject matter...." Pursuant to this rule, "the plaintiff bears the burden of establishing that the court has jurisdiction." *Fowler v. District of Columbia,* 122 F.Supp.2d 37, 39–40 (D.D.C.2000) (citation omitted). The rule also imposes "an affirmative obligation [on the court] to ensure that it is acting within the scope of its jurisdictional authority ... [and for that] reason, the '[p]laintiff's factual allegations in the complaint ... will bear closer scrutiny in resolving a 12(b)(1) motion' than on a 12(b)(6) motion for failure to state a claim." *Id.* at 40 (citations omitted). The Court may also consider matters outside the pleadings to assure itself that it in fact has jurisdiction over this case. *Id.* In contrast, a motion to dismiss under Rule 12(b)(6) tests not whether a plaintiff will ultimately prevail on the merits, but only whether the plaintiff has properly stated a claim for which he is entitled to relief. *Woodruff v. DiMario,* 197 F.R.D. 191, 193 (D.D.C.2000). Thus, a complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court must construe plaintiff's pleadings liberally because they are filed by a *pro se* litigant. *Haines v. Kerner,* 404

---

**7.** Defendant also initially sought dismissal of the claims filed against Commissioner Reilly pursuant to Fed.R.Civ.P. 12(b)(2) (lack of personal jurisdiction) and Fed.R.Civ.P. 12(b)(4) (insufficiency of process). Def.'s Mot. at 1. However, the Court deems these arguments mooted by plaintiff's decision to name the United States Parole Commission as the sole defendant. *See supra* at 1 n. 1. As indicated, plaintiff is being granted permission to make this substitution.

U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

## B. Whether Plaintiff's Sole Remedy is a Writ of Habeas Corpus

■ Plaintiff posits that he is not seeking "to challenge the fact or duration of his imprisonment[,]" and therefore, he may properly maintain this non-habeas action. Pl.'s Opp'n at 2. Defendant contends, on the other hand, that because the relief plaintiff seeks, *i.e.*, a new parole hearing, could improve plaintiff's chances of receiving an earlier release date, his sole remedy is through a habeas petition. Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss ("Def.'s Reply") at 2.[8]

■ The District of Columbia Circuit has "made [it] clear that [a writ of] habeas [corpus] is the exclusive remedy for a federal prisoner bringing any claim that would have a 'probabilistic impact' upon the duration of his custody." *Bourke v. Hawk–Sawyer,* 269 F.3d 1072, 1074 (D.C.Cir.2001) (quoting *Razzoli v. Federal Bureau of Prisons,* 230 F.3d 371, 373 (D.C.Cir.2000)) ("habeas is indeed exclusive even when a non-habeas claim would have a merely probabilistic impact on the duration of custody."). In *Razzoli,* the Circuit Court held that a prisoner could not assert a claim under the Privacy Act because his only recourse was to seek relief through a habeas petition. 230 F.3d at 376. As in this case, the prisoner's Privacy Act claim in *Razzoli* alleged that the Bureau of Prisons and the Parole Commission had "violated 5 U.S.C. § 552a(e)(5) by maintaining in their files and using a false record, [a] report of [a] drug possession incident, even though they knew it to be false." *Id.* at 374. The plaintiff argued that the defendants had relied on this false information resulting in his loss of 60 days statutory good time credit and the withdrawal of his recommended parole release date, which was replaced by "a new date twenty-four months later, in effect delaying his eligibility for parole by two years." *Id.* at 373. The Circuit Court "conclud[ed] that Razzoli's Privacy Act claim—not only in regard to the good time decision but also the parole eligibility determination— [was] not cognizable." *Id.* at 376. Rather, the plaintiff's sole recourse was to file a petition for habeas relief, even though his "non-habeas claim would have [had] a merely probabilistic impact on the duration of [his] custody." *Id.* at 373;[9] *see also Bourke,* 269 F.3d at 1074 (holding that

---

8. Defendant is correct that this action cannot be maintained pursuant to 42 U.S.C. § 1983. That statute provides, in part:

 Every person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,* subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

 (emphasis added). Because § 1983 is only applicable to the actions of state officials, plaintiff has not asserted a viable claim against the United States Parole Commission. Therefore, this claim will be dismissed.

9. However, the *Razzoli* Court held that the petitioner was entitled to bring a claim pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (2000) ("FOIA"), because it would not affect the duration of his custody. This was so, the Court reasoned, because "[a] FOIA claim wins, generally speaking, if the plaintiff has properly requested the document from the agency and no exemption applies." *Razzoli,* 230 F.3d at 376

prisoner could not file a petition for mandamus challenging the BOP's determination that he was ineligible to be considered for a reduction in his sentence. "Although Bourke's success on this claim would not necessarily result in his being released any earlier, it would raise that possibility and thus have a 'probabilistic impact' upon the duration of his custody."); *Chatman–Bey v. Thornburgh,* 864 F.2d 804, 809 (D.C.Cir. 1988) (holding that federal prisoner's claim was properly filed as an action for habeas although he was "not laying claim to an immediate release or release in the near future. He is, however, maintaining that he is being deprived of the chance to secure his release ... by unlawfully being declared ineligible for parole consideration.").

In this case, as in *Razzoli* and *Bourke,* plaintiff's challenge to the standard relied on by the Parole Commission, and his assertion that a more lenient standard be utilized, would have a "probabilistic impact" on the duration of his custody because he argues that the Commission's reliance on the more stringent federal standard prejudiced his chances for parole. *Razzoli,* 230 F.3d at 373; *see also Chatman–Bey,* 864 F.2d at 807 ("the Supreme Court has expressly sanctioned the invocation of habeas where the injury in question is, among other things, a prejudicing of one's right to be considered for parole."). In addition, plaintiff's Privacy Act claim, which seeks an order compelling the agency to expunge inaccurate information, is directly analogous to the Privacy Act claim asserted by the plaintiff in *Razzoli,* which the Court of Appeals held could only be asserted through a writ of habeas corpus. *See* 230 F.3d at 376.

In attempting to persuade the Court to reach the merits of his claims, plaintiff relies on several cases, none which persuade the Court to rule in plaintiff's favor.

First, while *Anyanwutaku v. Moore,* 151 F.3d 1053 (D.C.Cir.1998), may appear at first blush to support plaintiff's argument, upon closer scrutiny, it is distinguishable. There, the Circuit Court held that a prisoner was entitled to pursue a § 1983 claim in which he alleged

that prison officials denied him due process by miscalculating his parole eligibility date, by misclassifying him as a felon, and by failing to correct both errors, thus delaying his eligibility for parole; and that on the basis of his race and ethnicity, prison officials denied him access to prison programs that would have advanced his opportunity to obtain parole at an earlier date.

*Id.* at 1054. In holding that the plaintiff could pursue this claim, the Court of Appeals did state that because the plaintiff was "challeng[ing] his assigned parole eligibility date[,] ... there [was] no guarantee that he would have been released any earlier ... because D.C. parole decisions are entirely discretionary...." *Id.* at 1055 (citing D.C.Code Ann. § 24–204(a) (1996)). However, the *Anyanwutaku* Court affirmed the district court's dismissal of the plaintiff's claims, which alleged that "he was denied due process because he was not considered or 'classified' for parole within sixty days of incarceration ... because he [had been] misclassified as a felon ... [,]" as well as his claim challenging his parole eligibility date. Thus, the only claim that survived was the allegation that he was denied equal treatment by being barred from participating in certain prison programs. *Id.* at 1059. Significant to the Court's analysis was the fact that the plaintiff "was in the custody of the District of Columbia" because the Court's decision in *Chatman–Bey,* which required parole eligibility challenges to be brought in habeas, dealt expressly with federal prisoners...." *Id.* at 1057 (citing *Chatman–Bey,* 864 F.2d at 809). Unlike the plaintiff in

*Anyanwutaku,* plaintiff here is not in the custody of the District of Columbia, but is in federal custody. *See* Compl. at 1; Def.'s Reply at 4.[10] Thus *Chatman–Bey,* and not *Anyanwutaku,* is the applicable authority here.[11]

Similarly, plaintiff relies on *Long v. Gaines,* 167 F.Supp.2d 75, 82 (D.D.C.2001), which in turn relied on *Anyanwutaku,* in holding that prisoners could bring a class action challenging the constitutionality of the Parole Commission's parole eligibility regulations and procedures. The plaintiffs in *Long* were "D.C.Code offenders released from custody on parole supervision," who argued that "the Commission's regulations, on their face and as applied, systematically violate[d] the constitutional rights of D.C. parolees." *Id.* at 79. In holding that their claims did not have to be filed pursuant to the habeas statute, the district court reasoned that "a decision finding the Commission's procedures unconstitutional will not necessitate an earlier release of any of the plaintiffs, but will simply ensure the constitutional resolution of the plaintiffs' parole revocation process." *Id.* at 82. Unlike plaintiff, however, the *Long* plaintiffs had already been released on parole by the D.C. Board of Parole and thus, unlike plaintiff, were not in federal custody. In addition, the *Long* plaintiffs mounted a sweeping challenge to the Commission's procedures and regulations. Plaintiff here, however, does not challenge the constitutionality of the Commission's procedures or regulations; he merely argues that the Commission should have relied on the District of Columbia, and not the federal, parole standard in reaching its determination regarding whether to grant him parole. Consequently, plaintiff seeks a new parole hearing at which the District of Columbia parole standard is applied. It is clear that this challenge is more specific to plaintiff's parole determination and therefore has a "probabilistic impact" on plaintiff's continued confinement.

For the reasons set forth above, the Court concludes that reaching the merits of plaintiff's APA claim and his Privacy Act claim would have a probabilistic impact on his confinement pursuant to *Razzoli,* and therefore plaintiff may only raise these claims in a petition for a writ of habeas corpus.

**10.** Pursuant to the National Capital Revitalization and Self–Government Improvement Act of 1997, Public Law No. 105–33, § 1123(a)(1), 111 Stat. 712, 745, Congress transferred the authority of the District of Columbia Parole Board to the United States Parole Commission. *See Noble v. United States Parole Commission,* 194 F.3d 152, 153 n. 1 (D.C.Cir.1999). Thus, District Columbia prisoners are now detained in federal custody. *Id.* at 153.

**11.** Furthermore, in *Razzoli,* the Court of Appeals reaffirmed the continuing viability of *Chatman–Bey:*

[In] *Chatman–Bey* ... we found that habeas was the exclusive remedy even where a claim's impact on custody was only probabilistic. *Chatman–Bey* itself involved a decision on parole *eligibility,* a necessary but not sufficient step toward the actual grant of parole. Concluding that there is no inescapable conflict between *Chatman–Bey* and the later Supreme Court decisions, we adhere to *Chatman–Bey:* for a federal prisoner, habeas is indeed exclusive even when a non-habeas claim would have a merely probabilistic impact on the duration of custody. 230 F.3d at 373; *see also id.* at 376 ("In non-habeas federal prisoner actions, a plaintiff could almost always name a defendant over whom the district court for the District of Columbia would have personal jurisdiction. But a habeas challenge must be brought against the custodian, a rule that channels such claims into the federal court with jurisdiction over the claimant's prison.... The consequence is, of course, every bit as applicable here as in *Chatman–Bey* itself, but had little or no relevance to *Anyanwutaku* ....").

## C. Whether Transfer of This Action is Warranted

The next question the Court must address is whether this matter should be transferred to the district where plaintiff is incarcerated so that he may assert his claims in a habeas petition.[12] The Court does not find transfer warranted in this case. It is clear that plaintiff has previously filed a petition for a writ of habeas corpus before the District Court for the Eastern District of Virginia, raising at least one of the issues he seeks to raise before this Court in this case. *See* Def.'s Mot., Ex. I *(Forrester v. Garrahgty,* No. 01–1366, slip op. at 1 (E.D.Va. Sept. 26, 2002)). Specifically, plaintiff raised and the Virginia District Court rejected his claim "that the Commission relied on erroneous information in departing from the guidelines to deny parole." *Id.* at 10. The government argues that pursuant to Supreme Court precedent, plaintiff may not file a second habeas petition. Def.'s Mem. at 8. As support for its position, the government relies on *McCleskey v. Zant,* 499 U.S. 467, 494, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), where the Court stated:

> When a prisoner files a second or subsequent application [for a writ of habeas corpus], the government bears the burden of pleading the abuse of writ. The government satisfies its burden if, with clarity, and particularity, it notes peti-

tioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ. The burden to disprove abuse then becomes petitioner's. To excuse his failure to raise the claim earlier, he must show cause for failing to raise it and prejudice therefrom as those concepts have been defined. . . .

As indicated, defendant argues that Forrester has raised at least one identical issue here as was raised in his prior habeas petition ·(the inaccurate information issue) and posits that the Court should order plaintiff "to show cause why the Complaint should not be dismissed[,]" due to his failure to raise his other challenges before the Court that previously adjudicated his habeas petition. Defs.' Mem. at 10. Assuming plaintiff desires to pursue another habeas action, the Court concludes that such a showing, if it can be made, should be presented to the Court having jurisdiction over plaintiff's custodian, as that would be the only Court that could afford plaintiff habeas review.[13] Moreover, because plaintiff has previously filed a motion seeking habeas relief, and he appears to the Court to be highly knowledgeable of the legal process concerning how to challenge his detainment, specifically habeas relief, the Court concludes that he is capable of deciding whether to re-file this action as a habeas

---

12. The plaintiff is not detained in the District of Columbia and therefore he cannot maintain a habeas action in this district. The District of Columbia Circuit has held that "[a] district court may not entertain a habeas corpus action unless it has personal jurisdiction over the custodian of the prisoner." *Guerra v. Meese,* 786 F.2d 414, 415 (D.C.Cir.1986) (citations omitted). This is because the prisoner's "custodian is the person having day-to-day control over the prisoner. That person is the only one who can directly produce 'the body' of the petitioner." *Id.* at 416; *see also Chatman–Bey,* 864 F.2d at 811 ("[T]he proper defendant in federal habeas cases is the [peti-

tioner's] warden."); *In re Tripati,* 836 F.2d 1406, 1407 (D.C.Cir.1988) ("A habeas petition may be adjudicated only in the district in which [the petitioner's] immediate custodian, his warden, is located.") (citing *Guerra,* 786 F.2d at 414).

13. Plaintiff has filed a sur-reply to the defendant's reply. Although he did not seek leave of Court to file this pleading, the Court has considered the arguments contained in this supplemental pleading, as the defendant has not sought to strike it.

action in the Court having jurisdiction over his custodian. While transfer of a habeas case is typically warranted, *see Chatman–Bey,* 864 F.2d at 814 n. 10 ("[T]ransfer ... is uniquely appropriate in habeas cases by virtue of the clear limitations as to personal jurisdiction over the various wardens in the Bureau of Prisons system."), habeas relief was not sought in this case, which the Court concludes was a strategic choice made by plaintiff, in light of the fact that he had previously sought and was denied such relief. Accordingly, the Court concludes that transferring this non-habeas action is not appropriate and therefore will dismiss this action without prejudice so that plaintiff can decide whether to re-petition for habeas relief in the proper district.[14]

**SO ORDERED** on this 18th day of March, 2004.[15]

### *ORDER*

In accordance with the Court's Memorandum Opinion that accompanies this Order, it is hereby

**ORDERED** that Plaintiff's Motion to Correct Caption and Substitute Defendant in Complaint [# 9] is granted. It is further

**ORDERED** that Defendant's Motion to Dismiss [# 8] is granted. The complaint herein is dismissed without prejudice. It is further

**ORDERED** that plaintiff's Motion for Appointment of Counsel [# 5] and Plaintiff's Motion Requesting the Court to Compel the Defendants to Comply with Plaintiff's Request for Documents and Ad-

missions [# 15] is denied without prejudice. It is further

**ORDERED** that Defendant's Motion for a Protective Order [# 16] is denied as moot. It is further

**ORDERED** that Plaintiff's Motion Urging the Court to Reach the Merits of his Claim [# 11] and Plaintiff's Motion Requesting the Court to Take Judicial Notice [# 12] are denied as moot.

So Ordered on this 18th day of March 2004.

---

14. Because the Court concludes that it lacks subject matter jurisdiction over plaintiff's complaint, it will deny plaintiff's remaining motions without prejudice, which includes a motion for the appointment of counsel.

15. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.